# Selected Listings Company, Inc. d/b/a Selected Listings Company v. Ralph E. Humiston

[370 A.2d 1297]

No. 352-75

Present: Barney, C.J., Daley, Larrow, and Billings, JJ., and Keyser, J. (Ret.), Specially Assigned

Opinion Filed February 1, 1977

*Dick, Hackel & Hull*, Rutland, for Plaintiff.

*Hanford G. Davis*, Brandon, for Defendant.

**Billings, J.** This is an appeal from a judgment order of the Rutland Superior Court in a contract action. Judgment was ordered in the amount of $3,000.00 with interest.

In 1973, Thomas Stark contacted Selected Listings Company through its licensed real estate salesman, James Kaufman, Jr., to assist him in obtaining a residence in the Ludlow area. Having no listed residence satisfactory to Stark, Kaufman suggested that Stark consider the purchase of a modular house for erection on a building lot. Eventually, Stark purchased a building lot through Selected, and Kaufman arranged for Stark to visit a modular house owned by a real estate agent-dealer in modular

houses, Ralph Humiston, the defendant-appellant. Stark and Humiston later met several times about the matter, Kaufman was also present on some of these occasions.

In May, 1973, Kaufman and Humiston discussed the payment to Selected of a commission of ten per cent of the gross price of the modular house installed upon Stark's lot. On May 31, 1973, Kaufman wrote Humiston a letter concerning payment of the commission upon closing of the sale of the modular house. The letter stated his understanding subject to Humiston's disagreement. In July, 1973, Humiston called Kaufman and explained that a statement of the total cost of the modular house must be presented by Stark to the bank where he was obtaining a loan for the purchase, and that the itemized statement must include the commission, if that cost was to be a part of the loan advanced by the bank. Stark was present in Kaufman's office and gave his approval for its inclusion. On July 11, 1973, Humiston gave Stark, by letter, an itemized statement of the total cost of the modular house erected and ready for occupancy. The statement included a $3,000.00 commission to "the selling office". The modular house was subsequently erected and Selected wrote Humiston in December, 1973, requesting payment of its commission. Humiston replied in January, 1974, denying any obligation to pay.

The modular house was delivered and erected at a total cost of $29,806.51. The Vermont Federal Savings and Loan Association approved a loan to Stark of $35,200.00, and a credit balance remains to his account. Humiston has been paid $29,100.00. Neither Selected nor Kaufman has received any commission.

The defendant-appellant Humiston argues that the commission was for the sale of a modular house erected and ready for occupancy, which constitutes a sale of real estate, and because the plaintiff-appellee is a licensed real estate agency, Rule 16(2) of the Vermont Real Estate Commission applies and requires a written listing agreement for the contractual relationship to be enforceable.

(2) Every listing agreement shall be in writing. It shall contain a clear and definite statement of the commission to be allowed the agent. It shall contain a clear and definite provision for its termination, properly identify the

> property, and contain all the terms and conditions of the sale and the termination date. It shall show the signature of all parties concerned. If a listing is exclusive, or gives the agent the exclusive right to sell, it must have *Exclusive Listing* and/or *Exclusive Right to Sell* in BOLD FACE TYPE. All listings shall show the commission to be paid in percentage figures. Copies of listing agreements at the time they are executed shall be placed in the hands of all parties involved.

See *Green Mountain Realty, Inc.* v. *Fish*, 133 Vt. 296, 299, 336 A.2d 187 (1975).

The appellant recognizes that a modular house might be classified as personal property but argues that this commission is claimed to be due for the sale of a modular house completely erected and ready for occupancy with the commission based on a ready-for-occupancy condition and as such must be considered a real estate transaction. By analogy he cites *In re Willey*, 120 Vt. 359, 140 A.2d 11 (1958).

We believe that the better view is that the transaction between Kaufman and Humiston involved personal property but, more importantly, was in the nature of a finder's agreement and was not a sales transaction.

This holding is consistent with *In re Willey, supra,* which concerned the status of a mobile home situated on a lot. Neither party argues that a modular home erected on a building lot is other than real estate. The crucial issue here is timing; this agreement was to bring a prospective buyer and a seller together concerning property as yet unattached to the land, hence personal property. Basing the commission on a ready-for-occupancy value did not impart any particular status to the transaction but merely reflects the bargain and exchange element used to ascertain the value of the services rendered.

■ As we stated above, the transaction was in the nature of a finder's agreement, a transaction to procure a purchaser. The sales aspect ran between Stark and Humiston, and not between Selected and Humiston. An agreement for the procuring of a purchaser of personal property is not an agreement for the sale of goods, and therefore 9A V.S.A. § 2-201(1), the statute of frauds relating to the sale of goods as defined in the Uniform Commercial Code, is not applicable. See *Brown* v. *Lee*, 242 Ark. 122, 412 S.W.2d 273 (1967).

Implicit in the appellant's argument is the contention that the purchase of a modular house was a condition precedent to any obligation to pay a commission making this a sales transaction. Since the purchase and sale was completed, it is unnecessary to construe that aspect of the contract, however, even assuming successful sale was such a condition, we believe it does not detract from, but also supports, a conclusion that the agreement was to find an ultimate purchaser with whom Humiston could contract rather than securing the sale itself. This is borne out by the testimony at trial as to the involvement of Kaufman in the arrangement and the effectuation of the final product, erection of the modular house.

We conclude that Rule 16 did not apply and the absence of a written listing agreement or other written agreement does not preclude enforcement of the contract.

On May 21, 1973, Kaufman discussed the commission with Humiston, and on May 31, 1973, sent Humiston the following letter:

> This letter confirms my understanding with you relative to our commission on the sale of a modular home substantially like the one you have built yourself. The sale will be to Mr. and Mrs. Thomas Stark. The price of the house will be in the area of $30,000.00 and you have agreed that our commission should be ten percent of the gross delivered, including the foundation. If I do not hear from you to the contrary, I will assume I am correct.

Humiston did not reply denying any obligation until January, 1974, after he had received a demand for payment. In the interim, Humiston had a telephone conversation with Kaufman and wrote a letter to Stark, both about the need for an itemized bank statement. The discussion and the letter each detailed a commission to the selling office.

Neither Kaufman nor Humiston testified to the specific statements they made in their conversations from which offer and acceptance can be pinpointed, and Humiston denied making any such definitive statement. While the parties and their agents may have used imprecise language in describing these transactions, Humiston's letter of July 11, 1973, is a clear memorandum of agreement when it states a commission of $3,000.00 to be paid to *the selling office*. The parties apparently

referred to Selected as the selling office although in reality the seller was Humiston. It is clear that inclusion of a separate and distinct item of commission in that document acknowledges the contractual relationship and Humiston's obligation to pay Selected.

An issue which has clouded the proceedings has been the status of the bank, Stark or Humiston as a stakeholder. The Vermont Federal Savings and Loan Association approved a loan of $35,200.00 based upon the itemized statement of costs which included the $3,000.00 commission. While the record, including the findings of the lower court, are incomplete as to a specific accounting of the dispersal of those funds, three things are certain: Humiston has received $29,100.00 out of its total cost of $29,806.51; Selected has received no commission; and $2,600.00 remains of the loan amount credited to Stark's account.

■ Vermont pleading and practice provides for third-party practice and interpleader. V.R.C.P. 14, 22. These procedural avenues were open to the parties and the potential but unjoined parties, and are particularly suited to a situation like this one where several parties may claim a fund or allege that another party is liable for payment of a sum.

The facts of these transactions indicate that Humiston obligated himself to pay Selected a commission, upon a conduit theory, *i.e.*, he would charge Stark, and the bank would pay from the loan advance credited to Stark's account. Selected, however, was under no obligation to join any other party. V.R.C.P. 19, 20. The question of payment by Stark or the bank to Humiston is not in issue in this appeal even though it was argued here and raised tangentially in the briefs. The judgment does not reach that question, nor does it preclude any party from seeking appropriate remedies.

*Judgment affirmed.*