DADE COUNTY, a political subdivision of the State of Florida, Plaintiff-Appellee,

v.

ROHR INDUSTRIES, INC., etc., the Flxible Company, etc., Defendants,

Grumman Allied Industries, and Grumman Flxible Corporation, Defendants-Appellants.

DADE COUNTY, a political subdivision of the State of Florida, Plaintiff-Counterclaim Defendant-Appellee,

v.

ROHR INDUSTRIES, etc., et al., Defendants,

Grumman Allied Industries, Inc., a corporation, and Grumman Flxible Corp., a foreign corporation, Defendants-Counterclaim Plaintiffs-Appellants.

Nos. 85–6004, 86–5446.

United States Court of Appeals, Eleventh Circuit.

Sept. 8, 1987.

Frank A. Shepherd, Roy D. Wasson, Kimbrell & Hamann, P.A., Miami, Fla., for defendants-appellants.

John F. Finney, Dade County Attorney's Office, Miami, Fla., for Dade County.

Before JOHNSON and CLARK, Circuit Judges, and MORGAN, Senior Circuit Judge.

MORGAN, Senior Circuit Judge:

## I. BACKGROUND

Dade County, a political subdivision of Florida, sued four out-of-state corporations: The Flxible Company (Flxible), Rohr Industries, Inc. (Rohr), Grumman Allied Industries, Inc. (Grumman Allied), and Grumman Flxible Corp. (Grumman Flxible) for breach of contract and breach of express warranty arising out of the sale of certain transit buses to Dade County during 1973. In a non-jury trial, the district court ruled in favor of Dade County and ordered Grumman Allied and Grumman Flxible to pay $650,000 in damages.[1] Grumman Allied and Grumman Flxible appeal, alleging (1) the statute of limitations bars Dade County's claims; (2) Grumman Flxible should not be held liable because it is not a successor corporation that assumed the liabilities of Flxible; (3) the district court's judgment is unsupported by the evidence and (4) the district court erred in awarding prejudgment interest. We find that the statute of limitations precludes this action, so we reverse solely on that ground.

In 1973, after two rounds of competitive bidding, Dade County awarded Flxible purchase orders for two different series of buses. In a purchase order dated February 1, 1973, Dade County bought seventy-four transit buses, referred to as the "500 series," at a price of $45,800.05 per bus. Flxible delivered all of the 500 series by August 7, 1973. On September 11, 1973, Dade County purchased thirty transit buses, referred to as the "Orange Streakers," at a price of $51,509.00 per bus. Flxible completed delivery of the Orange Streakers by April 24, 1974. Flxible's standard express warranty covered both series of buses.[2]

1. The district court dismissed Flxible from the case because service of process was never properly perfected as to Flxible. In addition, the court entered judgment in favor of Rohr on all claims raised by Dade County against Rohr. Dade County contended that Rohr was liable under the instrumentality theory for the obligations of Flxible, the seller of the defective buses. If Flxible, Rohr's wholly-owned subsidiary, was not a separate corporate entity but a mere division of Rohr, then the court could hold Rohr liable for Flxible's actions. The court determined, however, that Flxible was not a mere instrumentality of Rohr. Alternatively, the court ruled that Rohr did not use Flxible for any improper purpose. Under the instrumentality theory in Florida, a parent corporation can be held liable for the acts of its wholly-owned subsidiary only if there is proof of improper conduct by the parent in its use of the subsidiary. *Dania Jai-Alai Palace, Inc. v. Sykes,* 450 So.2d 1114 (Fla.1984).

2. The relevant portions of the warranty read as follows:

STANDARD WARRANTY

THE FLXIBLE COMPANY, as builder, and hereinafter referred to as "Manufacturer," warrants to the original purchaser of each new Flxible motor coach including all equipment and accessories thereon (except tires and tubes), manufactured or supplied by the Flxible Company, to be free from defects in material and workmanship under normal use and service. The Flxible Company's obligation under this warranty being limited to repairing or at its option furnishing a replacement part at its factory or warehouse designated by it for any part or parts thereof which shall, within twelve (12) months after delivery of such motor coach to the original purchaser or before such motor coach has been driven thirty-five thousand (35,000) miles, whichever event shall first occur, be returned to Manufacturer with transportation charges prepaid and which examination shall disclose to Manufacturer's satisfaction to have been thus defective.

Reimbursement will be made by Manufacturer to the original purchaser for labor involved in removing and replacing such defective part or parts which are so returned to Manufacturer within twelve (12) months or thirty-five thousand (35,000) miles, whichever event shall first occur, in an amount determined by multiplying an agreed on number of man-hours for the removal and replacement of such defective parts by a per hour mechanical labor rate which shall not exceed the direct labor rate in effect in the original purchaser's service garage at the time of performance of such labor.

The provisions of this warranty shall not apply to any Flxible motor coach which has been subject to misuse, negligence or accident, or which shall have been repaired or altered in any way, so as, in the judgment of Flxible, to affect adversely its performance and reliability, nor to normal maintenance services.

THIS WARRANTY IS EXPRESSLY IN LIEU OF ANY OTHER WARRANTIES, EXPRESSED OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, AND OF ANY OTHER OBLIGATIONS OR LIABILITY ON THE PART OF MANUFACTURER, AND THE FLXIBLE COMPANY

On November 15, 1973, Hobart McKay, Dade County's chief operating officer from 1971 to June 1976, was informed of a serious problem of body rust on the new 500 series. McKay examined the buses and found extensive rusting of the body panels at the beltline of the buses as well as rusting around the side and rear window frames. About sixty to ninety days after delivery, the Orange Streakers also developed these same rusting problems. Within the applicable warranty periods of both series of buses, Dade County notified Flxible of the rusting problems.[3]

Flxible then attempted to correct the problems by testing several methods of repair. Flxible had some of the buses sanded, reprimed and repainted where they were rusting along the beltline. More extensive repairs were made on three of the 500 series buses, one each done by Fruehauf, Star Body, and Dade County's own inhouse body shop. Shortly after the repair work, all the buses began to rust through again. Although Flxible and Dade County continued to discuss the problem, Flxible did not undertake any further repair work.

Dade County on August 15, 1978, filed suit against Flxible, Rohr, Grumman Allied and Grumman Flxible. The complaint sought to impose liability upon Flxible as the manufacturer and seller of the buses. Dade County alleged that Rohr was liable because Flxible was a mere agency or instrumentality of Rohr. Dade County included Grumman Allied and Grumman Flxible on the theory that since they had obtained the total assets of Flxible from Rohr by merger, sale or transfer they had thereby expressly or impliedly assumed the contract obligations and warranties of Flxible and/or Rohr. The four corporations answered Dade County's complaint and asserted the statute of limitations defense.

On May 8, 1979, the district court entered an order for a pretrial conference, setting the conference for July 20, 1979, and requiring that seven days prior to the conference a pre-trial stipulation be filed. The section of the order requiring the filing of a pretrial stipulation stated the following:

> The filing of a motion for continuance or a stipulation of extension by counsel will *not* extend any deadline in this time schedule. Counsel can expect dismissal or striking of defenses, as appropriate, for failure to *file* the pre-trial stipulation on time.

Thereafter, Dade County and the defendants jointly moved to continue the pre-trial conference. The district court granted the motion and reset the conference for August 15, 1979.

Then, on August 13, 1979, the district court dismissed Dade County's suit without prejudice because the court had not received the required pre-trial stipulation nor heard from counsel for the plaintiff. The defendants on August 20, 1979, filed a motion to vacate the court's order of dismissal. Dade County took no action. Almost seven months later, on March 11, 1980, the defendants filed their notice of withdrawal of defendants' motion to vacate the order of dismissal. Ten days after defendants withdrew their motion, Dade County filed its motion to vacate the order of dismissal. The clerk of the court, however, refused to accept the motion and returned it to Dade County's counsel for failure to meet the court's filing requirements.

Finally, on March 27, 1980, Dade County filed another motion seeking to set aside the court's order of dismissal. As grounds for its motion, Dade County asserted that it "believed that the filing of the joint motions for a continuance would negate the requirement [in the Pretrial Order] for the filing of pre-trial stipulations ..." Accord-

---

NEITHER ASSUMES NOR AUTHORIZES ANY OTHER PERSON TO ASSUME FOR IT ANY OTHER LIABILITY IN CONNECTION WITH SUCH MOTOR COACH.

**3.** The 500 series eventually developed rust on the engine header support assembly and prob-

lems with their frames or undercarriages. The district court ruled that the express warranty did not apply to these problems because they did not occur within the one year warranty period.

ing to Dade County, that belief showed "mistake or inadvertence," a basis for relief under Fed.R.Civ.P. 60(b)(1). Defendants opposed Dade County's motion to vacate the order of dismissal, alleging that the negligence in ignoring the language of the pre-trial order was not excusable. On June 18, 1980, the district court denied Dade County's motion. Dade County did not appeal the order of dismissal or the order denying its motion to vacate the order of dismissal.

On June 25, 1980, Dade County filed a second complaint which restated the same material allegations against the same four defendants as found in the first complaint. Once again, the defendants answered, alleging, among other things, the statute of limitations defense.

Thereafter, the defendants moved for summary judgment on the statute of limitations defense. In denying the motion, the court allowed the refiled complaint to relate back to the date of the original complaint for purposes of the statute of limitations.[4]

Upon the parties' withdrawal of the demand for a jury trial, the court ordered a non-jury trial and heard the parties' evidence in eight days in July 1984. On April 16, 1985, the district court rendered its verdict in favor of Dade County, finding that Grumman Allied and Grumman Flxible, which had acquired Flxible's assets as well as its liabilities, had breached the contracts for sale and warranty on the buses. The court ordered Grumman Allied and Grumman Flxible to pay Dade County $560,000 plus interest and costs. Since the court's opinion did not mention the statute of limitations defense, the defendants moved the district court for relief pursuant to Fed.R.Civ.P. 59 on the ground that the defense was overlooked. The court denied the motion, once again relying on the relation back principle. Eventually, the court awarded $650,000 in compensatory damages and $520,783.57 in prejudgment interest for a total of $1,170,783.57 plus interest. Grumman Allied and Grumman Flxible appealed the judgment to this court.

## II. DISCUSSION

To determine the applicable statute of limitations for a diversity case in federal court, we must look to state law. *Erie Railroad v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). The defendants contend that Fla.Stat. § 672.2–725 or alternatively Fla.Stat. § 95.-11(2)(b) should apply to this case.[5] Section 672.2725(1), eventually renumbered as § 672.725, provides the following:

---

**4.** In its order dated January 27, 1984, the district court stated the following:

ORDERED that defendants' motion for summary judgment on statute of limitations grounds is denied. The court notes that the case was once dismissed for failure to timely file a pretrial stipulation. As a result, the case was refiled and reassigned to the same District Judge. Had it not been for the dismissal, no statute of limitations issues would have arisen unless the limitations period would have run out before August 15, 1978, the date of filing the original complaint. This court will allow relation back of the refiled complaint to the date of the original complaint for purposes of the statute of limitations. The general policies of statutes of limitations are well served by allowing relation back in this instance, since defendants clearly had notice of a putative cause of action against them since the original complaint and the case never really lost its continuity.

**5.** During oral argument before the Eleventh Circuit, counsel for Grumman Allied and Grumman Flxible only discussed § 95.11(2)(b), the five year statute of limitations. He prefaced his comments on that statute by stating the following:

Using a five year statute of limitations which is the one which would be most favorable to the appellees in this particular case, the alleged defects ... were discovered and the cause of action accrued as of November 15, 1973 on the seventy-four bus contract, and July 24, 1974 on the thirty bus contract. The second complaint ... was filed on July 25th, 1980, so if we do a simple mathematical calculation, the complaint is untimely filed under the five year statute of limitations, § 95.-11.

For the rest of his argument, when counsel stated that the first complaint was timely filed, he was referring to its timeliness under the five year statute of limitations, not the four year statute.

We do not construe counsel's strategy decision on how to allocate his time at oral argument as a waiver of the four year statute of limitations argument.

An action for breach of any contract for sale must be within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it. According to the defendants, the buses were movable goods,[6] and accordingly governed by Florida's Uniform Commercial Code and § 672.725. The Uniform Commercial Code (UCC) limitation period generally prevails over that contained in a general statute of limitations. *Lake Wales Publishing Co., Inc. v. Fla. Visitor, Inc.*, 335 So.2d 335, 336 (Fla. 2d D.C.A.1976). *See* Official Comment to UCC § 2–725. Thus, § 672.725's four year limitation period would be applied instead of the five year period for written contracts found in § 95.-11(2)(b). Section 672.725, however, was repealed as superfluous by 1974 Fla.Laws c. 74–382, § 26, effective January 1, 1975, when Fla.Stat. § 95.11(3)(k) (1975) made a four year limitation period applicable to all contracts.[7] *Lake Wales Publishing Co., Inc. v. Fla. Visitor, Inc.*, 335 So.2d 335 (Fla. 2d D.C.A.1976).

In *Dade County v. Ferro*, 384 So.2d 1283 (Fla.1980), the Florida Supreme Court ruled that when a cause of action arises from an occurrence which pre-dates the effective date of the statute of limitations, that statute does not apply. Accordingly, we must determine when Dade County's cause of action arose in order to place it within the parameters of the applicable statute of limitations.

Dade County admits that it first noticed the serious rust problem for the 500 series on November 15, 1973, and for the Orange Streakers by at least August 1, 1974. As a general rule, a statute of limitations begins to run when a person has notice of an invasion of his legal rights or a person has been put on notice of his right to a cause of action. *Kelley v. School Board of Seminole County*, 435 So.2d 804, 806 (Fla.1983). In a breach of warranty action, the statute of limitations begins to run when the contract is breached, and the breach occurs when the defect is discovered or should have been discovered. *Dubin v. Dow Corning Corp.*, 478 So.2d 71, 73 (Fla. 2d D.C.A.1985). For instance, in a warranty suit over a leaking roof, the statute of limitations begins to run when the owner has noticed the first leak. *Kelley v. School Board of Seminole County*, 435 So.2d 804, 806 (Fla.1983).

In *Kelly Tractor Co. v. Gurgiolo*, 369 So.2d 992 (Fla. 3d D.C.A.1979), the court applied the repealed § 672.725 to a breach of express warranty action. Gurgiolo purchased from Kelley Tractor two engines covered by an express warranty for future performance. Kelley Tractor delivered the engines in October 1968. For the next seven and a half years, Gurgiolo had significant mechanical difficulties with the engines. Finally, on June 30, 1976, Gurgiolo filed suit against Kelley Tractor. Because the cause of action had accrued prior to January 1, 1975, the Florida district court applied the four year statute of limitations in § 672.725 and found that the action was barred.

In an earlier case, *Fenner v. Florentine Forge, Inc.*, 342 So.2d 136 (Fla. 1st D.C.A. 1977), the trial court on February 11, 1975, dismissed the plaintiff's complaint as barred by the four year statute of limitations in § 672.725(1). In reversing the trial court, the court of appeals did not consider when the plaintiff's cause of action accrued. The court simply stated that § 672.-725(1) was repealed effective January 1,

---

6. Fla.Stat. § 672–105(1) defines goods in the following manner:

.... all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Chapter 678) and things in action.

The comment to UCC § 2–105 states that the definition of goods is based upon the concept of their movability.

7. Fla.Stat. § 95.11(3)(k) currently states that a legal or equitable action on a contract, obligation, or liability not founded on a written instrument, including an action for the sale and delivery of goods, wares, and merchandise, and on store account should be commenced within four years.

1975, so the plaintiff's action on a written warranty not under seal was governed by the five year statute of limitations set forth in § 95.11(3) (1973).

With this apparent conflict between Florida's courts of appeals, we must decide what is the correct procedure. We are persuaded by the reasoning of *Kelly Tractor Co. v. Gurgiolo* and the rule that the timing of the cause of action determines the applicable statute of limitations.

■ In this case, the breach of warranty was the rusting of the buses. By August 1, 1974, Dade County learned of the rust problems on both series of buses. Dade County's cause of action accrued at that time, prior to the repealing of § 672.-725. Thus, the four year statute of limitations in § 672.725 applies to this case. Dade County did not file its first complaint until August 15, 1978. Consequently, § 672.725 bars the action.

■ Even if we applied the five year statute of limitations, Dade County's suit would still be time-barred. As discussed earlier, Dade County's cause of action arose at least by August 1, 1974. Dade County filed its first complaint on August 15, 1978. Because of Dade County's failure to file a pre-trial stipulation, the district court on August 3, 1979, dismissed the complaint. Such an action was probably too harsh a penalty. *See Pond v. Braniff Airways, Inc.,* 453 F.2d 347 (5th Cir.1972) (dismissal with prejudice for failure of plaintiff's counsel to submit a proposed pretrial order is reversible). After Dade County was unsuccessful in moving the court to vacate its order of dismissal, Dade County decided not to appeal the order of dismissal.

Instead, on June 25, 1980, Dade County filed a second complaint virtually identical to the first complaint. When faced with the defendants' motion for summary judgment on the statute of limitations defense, the district court ruled the refiled complaint related back to the date of the filing of the first complaint. The district court erred in applying the relation back doctrine to the filing of a new second complaint. Although the filing of a federal action will initially toll the running of the statute of limitations, the subsequent voluntary dismissal of the federal action has the effect of placing the parties in a position as if the suit had never been filed. *Attache Resort Motel, Ltd. v. Kaplan,* 498 So.2d 501 (Fla. 3d D.C.A.1986), *See Stein v. Reynolds Securities, Inc.,* 667 F.2d 33 (11th Cir.1982) (dismissal of an earlier suit without prejudice does not authorize a subsequent suit brought outside of the otherwise binding statute of limitations). At the time of its filing, June 25, 1980, Dade County's second complaint was time-barred by Fla.Stat. § 95.11(2)(b), a five year statute of limitations.

■ Dade County contends that the defendants are estopped from asserting any statute of limitations defense because Dade County relied on the defendants' persistent efforts to repair the buses and their express representations that the work would be performed. Estoppel requires (1) words, acts, conduct, or acquiescence causing another to believe in the existence of a certain state of things, (2) willfulness or negligence with regard to the acts, conduct, or acquiescence, and (3) detrimental reliance by the other party upon the state of things so indicated. *Matter of Garfinkle,* 672 F.2d 1340, 1347 (11th Cir.1982). Attempted repairs do not toll the statute of limitations, but repairs coupled with deception may create an estoppel. *R.A. Jones & Sons, Inc. v. Holman,* 470 So.2d 60, 66, n. 11 (Fla. 3d D.C.A.1985). In this case, the defendants at first attempted to repair the buses but eventually disavowed any further responsibility to repair. Dade County was not free to sleep on their rights, just because the defendants undertook repairs. Dade County has presented no evidence of deception on the part of the defendants, so the defendants are not estopped from bringing the statute of limitations defense.

■ Additionally, Dade County alleges that the defendants waived their statute of limitations defense when they moved the court to vacate its order of dismissal of the first complaint. Seven months later, the defendants filed a notice of withdrawal of

their motion to vacate the order of dismissal. Defendants stated that they originally filed the motion to vacate, so the district court would consider their statute of limitations defense. Once they realized Dade County was taking no action to overturn the dismissal of its suit, the defendants withdrew their motion. Waiver requires (1) the existence at the time of the waiver a right, privilege, advantage, or benefit which may be waived; (2) the actual constructive knowledge thereof; and (3) and intention to relinquish such right, privilege, advantage, or benefit. *Matter of Garfinkle*, 672 F.2d 1340, 1347 (11th Cir.1982). We do not regard the defendants' activities as an intentional relinquishment of a known right. *See Fireman's Fund Ins. Co. v. Vogel*, 195 So.2d 20 (Fla. 2d D.C.A. 1967); *Gilman v. Butzloff*, 155 Fla. 888, 22 So.2d 263 (1945).

For the foregoing reasons, we find Dade County's suit barred by the statute of limitations, and we REVERSE the district court's judgment in favor of Dade County.