Wavie C. CLARK, et al., Plaintiffs,

v.

JIM WALTER HOMES, INC., Defendant.

Civ. A. No. 88–T–1117–S.

United States District Court, M.D. Alabama, S.D.

April 18, 1989.

---

John L. Knowles, Kelly & Knowles, Charles W. Fleming, Jr., Lee & Fleming, Geneva, Ala., for plaintiffs.

Richard H. Gill, Lee H. Copeland, Copeland, Franco, Screws & Gill, Montgomery, Ala., for defendant.

## ORDER

MYRON H. THOMPSON, District Judge.

In this case plaintiffs Wavie C. Clark and Jerelene Clark sue defendant Jim Walter Homes, Inc. on a variety of theories, all relating to the purchase of a house by the Clarks from Jim Walter Homes in 1983. The matter is presently before the court on Jim Walter Homes's January 18, 1989, motion for summary judgment as to all

counts. For the reasons that follow, this motion is due to be granted in part and denied in part.

## FACTUAL BACKGROUND

Jim Walter Homes and the Clarks entered into an agreement in February 1983 for the construction of a house in the city of Geneva, Alabama. The Clarks allege that the parties entered into a construction contract and a separate contract in which the Clarks signed a promissory note and mortgage, with Jim Walter Homes as mortgagee, in return for the house. Apparently Jim Walter Homes only partially constructs houses in many of the contracts into which it enters, although the parties in this case allegedly agreed that Jim Walter Homes would fully complete the house for the Clarks.

The Clarks apparently closely monitored the construction of their future home and were dissatisfied with Jim Walter Homes's performance of the contract early in their relationship. They allege that, since the completion of the contract, numerous repairs have been necessary, some of which Jim Walter Homes has performed, or attempted to perform. The instant suit was filed by the Clarks in Geneva County Circuit Court in January 1987. Jim Walter Homes, a Florida corporation, removed the case to this court under 28 U.S.C.A. §§ 1332, 1441(a) as a foreign defendant.

The Clarks lodge seven counts for relief against Jim Walter Homes, traveling on four general legal theories: breach of contract, breach of warranty, fraud and the tort of outrage. Jim Walter Homes moves for judgment in its favor as to all of these claims, arguing that no genuine issues of material fact are in dispute in the case and that it is entitled to judgment as a matter of law. The court finds that judgment is due Jim Walter Homes as to the charges of breach of contract, outrage and breach of warranty under the Magnuson–Moss Warranty Act, 15 U.S.C.A. § 2301 et seq., but that the state law warranty and fraud claims survive summary judgment. The court will group the Clarks' various counts together by legal theory for the purpose of disposing of this motion.

## BREACH OF CONTRACT CLAIMS

The Clarks charge Jim Walter Homes with breach of both the construction contract and the contract involving the promissory note and mortgage. As to the construction contract, the Clarks contend that Jim Walter Homes materially varied from the plans and specifications for the house as contained in the contract. In his deposition, Wavie Clark detailed a number of areas, relating to both workmanship and faulty materials, in which he found Jim Walter Homes's performance of the contract deficient. As to the mortgage contract, the Clarks allege that the contract should be ruled null and void on the grounds of inadequate consideration. In their response to the motion for summary judgment, the Clarks further suggest that Jim Walter Homes breached the mortgage contract in the same manner in which it breached the construction contract—by failing to build the house according to the parties' agreed upon specifications.

█ In its brief supporting its motion, Jim Walter Homes challenges count one of the Clarks' complaint, breach of the construction contract, on the grounds that Wavie Clark signed a release extinguishing the Clarks' claim on this theory. The parties signed both the construction contract and the mortgage contract on February 17, 1983. In documents filed in support of its motion, Jim Walter Homes includes a "completion slip" indicating the completion of construction on April 22, 1983. Wavie Clark signed this document and apparently dated it May 12, 1983. The document contains the following language.

> WARNING TO BUYER DO NOT SIGN THIS CERTIFICATE UNTIL ALL SERVICES HAVE BEEN SATISFACTORILY PERFORMED AND MATERIALS SUPPLIED OR GOODS RECEIVED AND FOUND SATISFACTORY
>
> This is to advise that the home which I purchased from Jim Walter Homes, Inc.,

has been built according to contract and the work completed to my satisfaction. I have inspected the house thoroughly and hereby advise you that there is no further work to be done nor any materials or fixtures to be supplied and that Jim Walter Homes, Inc., has fulfilled its building contract.

Jim Walter Homes asserts that this document operates as a release under Alabama law, thus barring the Clarks' cause of action for breach of the construction contract.

By § 12–21–109 of the 1975 Code of Alabama, the court is to construe this release according to its terms and the revealed intentions of the parties. "Where no ambiguity exists, the Court's only function is to interpret the lawful meaning and intentions of the parties as found within the agreement and to give effect to them." *Trimble v. Todd*, 510 So.2d 810, 812 (Ala.1987) (per curiam). *See generally Alabama Farm Bureau Insurance Co. v. Hunt*, 519 So.2d 480 (Ala.1987) (per curiam). The court finds the document signed by Wavie Clark to be clear and unambiguous in its language. The import of the document is that the Clarks deemed the construction contract performed and waived their right to sue for breach under that contract. The Clarks have not attempted to raise any defenses to the release, nor indeed have they addressed the issue of the release at all in the record of this case. Where the language and import of a release is unambiguous and the signing party presents no reason as to why the release should not be given legal effect, the issue is appropriate for resolution on summary judgment. *See Jehle–Slauson Construction Co. v. Hood–Rich, Architects and Consulting Engineers*, 435 So.2d 716 (Ala.1983) (affirming lower court's grant of summary judgment based on release of claims); *see also Grimes v. Liberty National Life Insurance Co.*, 514 So.2d 965 (Ala.1987) (discussing various potential defenses); 1975 Code of Ala. § 8–1–23 (1984) (written release need not be supported by consideration). Therefore, the court concludes that judgment in favor of Jim Walter Homes is due

with respect to count one of the Clarks' complaint.

■ The court further finds that this release dooms count seven of the complaint, the count relating to the mortgage contract. The Clarks present two different theories supporting their claim relating to this contract. The first theory appears in the complaint, where the Clarks seek nullification of this contract by the court on the grounds of inadequate consideration, due to the low value of the house constructed. They assert that the house "was in no wise valued at the amount of said note and mortgage."

Under settled Alabama law, the alleged inadequacy of Jim Walter Homes's consideration cannot, in and of itself, support an action for nullification of the contract.

> The rule is too well settled, even to admit of argument, that consideration in fact bargained for is not required to be adequate in the sense of equality in value. The mere inadequacy, alone, is never sufficient to vitiate a contract ... otherwise valid, and the courts are not disposed to enter upon nice calculations to strike a balance on the one side or the other. Absolute equality is not to be hoped for, and is seldom attained in men's dealings one with the other.

*Marcrum v. Embry*, 282 So.2d 49, 54 (Ala. 1973) (citations omitted). *See also Seier v. Peek*, 456 So.2d 1079, 1082 (Ala.1984).

In a case presenting facts substantially equivalent to those in this case, indeed involving mortgage and construction contracts entered into by Jim Walter Homes, the Alabama Supreme Court ruled that plaintiffs could not rely on an assertion of inadequate consideration to avoid their obligations under the mortgage. *Colburn v. Mid–State Homes, Inc.*, 266 So.2d 865, 871 (Ala.1972). The court did note that the plaintiffs in *Colburn* "do not complain that [Jim Walter Homes] failed to construct the same type of house as selected by them, or that the workmanship was faulty, or that they did not receive exactly what they bargained for in every respect." *Id.* In this case, on the contrary, the Clarks do make such complaints, leading to the second the-

ory proffered by the Clarks in support of count seven.

The Clarks contend in their brief opposing summary judgment that Jim Walter Homes breached the mortgage contract as well as the construction contract in failing to build the house according to agreed upon plans and specifications. However, just as the Clarks ignore Jim Walter Homes's reliance on the release with respect to count one, they have not explained to the court how their breach claim in count seven, if premised on breach of the construction contract, can survive the effect of the release under § 12–21–109. Therefore, under either theory presented by the Clarks, inadequate consideration or breach of the construction contract, it appears to the court that judgment is due Jim Walter Homes on count seven.

### WARRANTY CLAIMS

The Clarks also assert three counts of breach of warranty against Jim Walter Homes. First, the Clarks allege in count two of their complaint that Jim Walter Homes breached implied warranties of fitness for a particular purpose and merchantability under Alabama law. In count three, the Clarks allege breach of express warranty under Alabama law, and in count four they assert a cause of action for breach of warranty under the Magnuson–Moss Warranty Act, 15 U.S.C.A. § 2301 et seq.

The Clarks base their implied warranty claims on Alabama commercial code law, specifically 1975 Code of Ala. §§ 7–2–314 (warranty of merchantability) and 7–2–315 (warranty of fitness for particular purpose). Jim Walter Homes responds by arguing that the house involved in this dispute is not a "good" as defined by the Alabama commercial code. Section 7–2–105 defines such goods, in relevant part, as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale."

Underlying Jim Walter Homes's position on the warranty claims is a factual dispute between the parties as to whether the house in this case is a "prefabricated" or "modular" home.[1] The Alabama Supreme Court has expressly held that such homes are goods within the terms of Title 7 of the Alabama Code. *Gulf Coast Fabricators, Inc. v. Mosley*, 439 So.2d 36 (Ala.1983). In so doing, Alabama joined the majority of states considering the question under equivalent statutes derived from article 2 of the Uniform Commercial Code. *See Cates v. Morgan Portable Building Corp.*, 591 F.2d 17 (7th Cir.1979) (applying Illinois law); *Stephenson v. Frazier*, 399 N.E.2d 794 (Ind.App.1980), *transfer denied*, 425 N.E.2d 73 (Ind.1981); *Burnham v. Mark IV Homes, Inc.*, 387 Mass. 575, 441 N.E.2d 1027 (1982); *Little v. Grizzly, Mfg.*, 195 Mont. 419, 636 P.2d 839 (1981); *Fuqua Homes, Inc. v. Evanston Building & Loan Co.*, 52 Ohio App.2d 399, 370 N.E.2d 780 (1977) (per curiam); *see generally* Annotation, *What Constitutes "Goods" Within the Scope of UCC Article 2*, 4 A.L.R.4th 912, 937 (1981 & Supp.1988). *Cf. Selected Listings Co. v. Humiston*, 135 Vt. 106, 370 A.2d 1297 (1977) (critical factor is whether contract relates to housing materials not yet on site of construction). Thus, if the house in this case fits the type of modular or prefabricated home involved in *Mosley*, then clearly the Clarks' warranty claims under §§ 7–2–314 and 7–2–315 are viable. The Clarks, of course, maintain that the house constructed by Jim Walter Homes was just such a house, while the defendant argues that the house does not fall into this category.

On the other hand, Jim Walter Homes fails to notice that the types of warranty claims advanced by the Clarks have been applied by Alabama courts to dwellings outside the context of the commercial code as well. *See, e.g., Lee v. Clark and Associates Real Estate, Inc.*, 512 So.2d 42, 45 (Ala.1987); *Waites v. Toran*, 411 So.2d 127, 129 (Ala.1982); *Sims v. Lewis*, 374 So.2d 298 (Ala.1979); *Cochran v. Keeton*, 252

---

1. This type of house is composed of large, preformed sections, which are assembled on the construction site by the seller. *See, e.g., Fuqua Homes, Inc. v. Evanston Building & Loan Co.*, 52 Ohio App.2d 399, 370 N.E.2d 780 (1977) (per curiam).

So.2d 313 (Ala.1971). Thus it is clear that these claims survive summary judgment and that the nature of the house constructed by Jim Walter Homes is a factual issue for resolution at trial.

■ Similarly, this factual dispute ensures that the Clarks' express warranty claims are not ripe for resolution in this order as well. Jim Walter Homes stresses to the court in support of its motion that the Clarks have not produced the document which they contend comprises the express warranty issued to them by Jim Walter Homes. It is true that Wavie Clark asserts that he prescribed certain written specifications to be included in the contract and forwarded them to the defendant, while the defendant denies the existence of such specifications. The court understands the Clarks' allegations of an express warranty to extend beyond the narrow scope attributed to that count by Jim Walter Homes, however. In his deposition now a part of the record in this case, Wavie Clark clarified that the negotiations leading up to the formation of the contract between the parties included a number of photographic, verbal and written affirmations by Jim Walter Homes as to characteristics of the house. It appears to the court that the Clarks contend that these affirmations constituted "part of the basis of the bargain" between the parties, thus falling within the commercial code's definition of express warranties.

(1) Express warranties by the seller are created as follows:

(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

(2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

1975 Code of Ala. § 7–2–313 (1984). Given this definition of express warranty, the substance of the allegations made by Wavie Clark in his deposition, and the factual dispute between the parties as to the applicability of *Mosley*, 439 So.2d 36, the court is unable to grant summary judgment to Jim Walter Homes on count three of the Clarks' complaint.[2]

■ The Clarks' cause of action under the Magnuson–Moss Warranty Act poses somewhat different issues for the court, deriving from the limited scope of that law. The Act represents a progressive federal attempt to address problems with consumer warranties, although its breadth has yet to receive extensive judicial treatment. *See Najran Co. for General Contracting and Trading v. Fleetwood Enterprises, Inc.*, 659 F.Supp. 1081, 1099 (S.D.Ga.1986); *see generally Boelens v. Redman Homes,*

---

**2.** Jim Walter Homes suggests in its brief regarding this count that the fact that the Clarks cannot identify a specific duration for their alleged express warranty defeats their claim. Essentially, Jim Walter Homes argues that since the Clarks cannot characterize the express warranty as a "one-year" warranty or a "two-year" warranty, they should not be able to invoke it as grounds for relief. Jim Walter Homes cites no law for this proposition, however. It appears to the court that the scope of § 7–2–313 will often present this question of the length of effect of the warranty, and the court has no reason to believe that Alabama courts follow other than the general rule of "reasonable construction" of the proposed warranty. 77 C.J.S. *Sales* § 313(a) (1952). Warranties by their nature extend beyond the close of the contract on which they are based, and may be either continuing or limited in duration. *Id.* at § 302(d). The court rejects the position urged by Jim Walter Homes and finds the Clarks' reliance on § 7–2–313 reasonable in the context of this case.

*Inc.*, 748 F.2d 1058 (5th Cir.1984). In order to come within its provisions, the Clarks must show that the house for which they contracted falls within the category of "consumer goods" as defined in 15 U.S. C.A. § 2301(1).

> The term "consumer product" means any tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes (including any such property intended to be attached to or installed in any real property without regard to whether it is so attached or installed).

*Id.* The issue of whether warranties applicable to stationary houses, be they modular, prefabricated or otherwise, are covered by the Magnuson–Moss Warranty Act appears to have arisen in only one reported decision to date. *See Kravitz v. Homeowners Warranty Corp.*, 542 F.Supp. 317 (E.D.Pa.1982). The legislative history of the Act has been harshly criticized, moreover, for its lack of guidance to courts. *See Najran Co.*, 659 F.Supp. at 1099 & n. 12. Despite the undeveloped state of the law on this question, this court concludes that the Magnuson–Moss Warranty Act does not apply to the particular factual situation presented in this case.

The court begins with the statutory language of § 2301(1). The court notes first that Congress employed certain terms in the statute, "real property" and "personal property," which have settled meanings in traditional property law. Congress generally defined consumer products in § 2301(1) by reference to "personal property" with certain qualifications, and it specifically included in the definition of consumer goods "property intended to be attached to or installed in any real property." Real property, whatever Congress meant by that term, appears by implication to fall outside the class of consumer products covered by the statute.

Dwellings in general, like the land to which they are attached, fall into the category of real property as that term is commonly used in property law. *See* 73 C.J.S. *Property* § 14 at 183–84 (1983); *see also*

Black's Law Dictionary 1096 (5th ed. 1979) (defining real property as "Land and generally whatever is erected ... upon or affixed to land"). Thus, a plain reading of the statute suggests that sales of dwellings are not covered by the Magnuson–Moss Warranty Act. Of course, Congress neither explicitly adopted the common law meaning of real property nor provided an alternative definition for the term within the Act. Support for the view that Congress intended to include stationary houses within the real property category can be found, however, in both the legislative history and the administrative interpretations of the Act.

The House Report on the Act notes that the category of consumer products

> specifically include[s] such property intended to be attached to or installed in any real property without regard to whether it is so attached or installed. Under concepts of property law fixtures such as hot water heaters and air conditioners when incorporated in a dwelling become a part of the real property. It is intended that the provisions of [the Act] continue to apply to such products regardless of how they are classified.

H.Rep. No. 1107, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin. News 7702, 7717. The fact that Congress saw the need to extend the Act's coverage to products which at some point become part of real property leads to a reasonable inference that real property itself is not covered by the Act. The House Report strongly suggests that while fixtures are covered by the Act, the dwelling to which they are attached is not.

Regulations promulgated by the Federal Trade Commission more clearly posit that warranties issued in the type of construction contract entered into by the parties in this case do not fall within the coverage of the Magnuson–Moss Warranty Act.

> The coverage of building materials which are not separate items of equipment is based on the nature of the purchase transaction. An analysis of the transaction will determine whether the goods are real or personal property. The

numerous products which go into the construction of a consumer dwelling are all consumer products when sold "over the counter," as by hardware and building supply retailers. This is also true where a consumer contracts for the purchase of such materials in connection with the improvement, repair, or modification of a home (for example, paneling, dropped ceilings, siding, roofing, storm windows, remodeling). However, where such products are at the time of sale integrated into the structure of a dwelling they are not consumer products as they cannot be practically distinguished from realty. Thus, for example, the beams, wallboard, wiring, plumbing, windows, roofing, and other structural components of a dwelling are not consumer products when they are sold as part of real estate covered by a written warranty.

In the case where a consumer contracts with a builder to construct a home, ... the building materials to be used are not consumer products. Although the materials are separately identifiable at the time the contract is made, it is the intention of the parties to contract for the construction of realty which will integrate the component materials.

16 C.F.R. § 700.1(e), (f) (section markers omitted). Since in this case the Clarks contracted with Jim Walter Homes for the construction of a house, the regulations quite apparently would not encompass a warranty based on that contract. Although these regulations do not bind this court, the court agrees with Judge Pollak, who after consulting them commented in dicta that warranties covering houses lie outside the remedial provisions of the Magnuson–Moss Warranty Act. *Kravitz*, 542 F.Supp. at 321.

This conclusion may seem at odds with the fact, as developed by the court above, that modular houses are generally considered "goods" covered by the terms of article 2 of the Uniform Commercial Code. The anomaly may be partially explained by the difference in scope between the definition of "goods" in U.C.C. § 2–105 (or its Alabama equivalent, 1975 Code of Ala. § 7–2–105), which emphasizes mobility at the time of identification to the contract, and the definition of "consumer goods" under U.C.C. § 9–109 (1975 Code of Ala. § 7–9–109).[3] It is the latter definition to which courts turn for analogies to the consumer-oriented Magnuson–Moss Warranty Act. *See Balser v. Cessna Aircraft Co.*, 512 F.Supp. 1217, 1219 (N.D.Ga.1981); *Richards v. General Motors Corp.*, 461 So.2d 825, 826 (Ala.Civ.App.1984). Thus, in deciding whether the Act covers the alleged express warranty in the instant case, this court recognizes that modular homes come within the broad category of goods covered by article 2, but considers more persuasive the fact that no court has yet considered a stationary house to be a consumer product for the purposes of article 9. *See* U.C.C. § 9–109, 3 U.L.A. 201–203 (1981 & Supp.1989). *But see Selected Listings Co. v. Humiston*, 135 Vt. 106, 370 A.2d 1297 (1977) (dicta) (U.C.C. article 2 law) (defining modular houses as personal, rather than real, property).[4]

It may well be that the same policy concerns leading to the enactment of the laudable remedial provisions of the Act apply in the context of housing construction contracts as in transactions more clearly encompassed by the "consumer" label. Unfortunately, the Clarks have presented no arguments supporting their naked assertion of the applicability of the Act and, while the question is close, it is the conclusion of this court that Congress did not intend the provisions of the Magnuson–

---

**3.** Section 9–109 defines consumer goods as those goods which "are used or bought for use primarily for personal, family or household purposes." For a discussion of the relationship between real property concepts and § 9–109's definition of consumer goods, see 1 G. Gilmore, Security Interests in Personal Property § 10.6 at 310–12 (1965).

**4.** The court notes also that jurisdictions are divided over the related question of whether mobile homes are consumer goods under § 9–109. *See* Annotation, *Secured Transactions: What Constitute Consumer Goods Under UCC § 9–109(1)*, 77 A.L.R.3d 1225, 1243–47 (1977 & Supp.1988).

Moss Warranty Act to extend to such contracts. Therefore, summary judgment in favor of Jim Walter Homes on count four is in order.

## FRAUD CLAIM

In count six of the complaint, the Clarks allege that an agent of Jim Walter Homes made material misrepresentations to them at the time of formation of the contract, resulting in their injury. Jim Walter Homes's primary grounds for summary judgment as to this count is that the limitations period had run on such an action by the time the Clarks filed their complaint in this case.

The elements of a claim of fraudulent misrepresentation under Alabama law are: (1) a false representation by defendant to plaintiff; (2) of a material fact; (3) upon which plaintiff reasonably relied; and (4) which resulted in damage to plaintiff. *Sharp Electronics Corp. v. Shaw*, 524 So.2d 586, 592 (Ala.1987). A fifth element, applicable to the Clarks' prayer for punitive damages in count six, is either intent to deceive or reckless disregard of falsity on the part of defendant. *Continental Electric Co. v. American Employers' Insurance Co.*, 518 So.2d 83, 88 (Ala.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1997, 100 L.Ed.2d 228 (1988). Jim Walter Homes maintains that it made no misrepresentations of fact and that any alleged misrepresentations were simply statements of opinion. Upon perusal of Wavie Clark's deposition, however, the court finds that he alleges a number of misrepresentations which could support a cause of action for fraud under Alabama law.

Jim Walter Homes contends that such an action is time barred. The statute of limitations for fraudulent misrepresentation actions under 1975 Code of Ala. § 6–5–101 (1977) was, at the time of the alleged misrepresentations, one year from the date of discovery of the facts comprising the alleged fraud; the statute has since been amended to provide a two-year limitations period from the date of discovery. 1975 Code of Ala. § 6–2–3 (1977 & Supp.1988).[5] Since Wavie Clark admitted knowledge of the inaccuracy of Jim Walter Homes's representations about the house even as early as 1983, but failed to file this lawsuit until late January of 1987, the defendant contends that the statute has run on the fraud aspect of the Clarks' suit.

The Clarks respond to this limitations defense by asserting that, although they did have knowledge of flaws in the house which cast doubt on the truth of the representations made by Jim Walter Homes's agents, they took no legal action because Jim Walter Homes repeatedly assured them that the flaws would be corrected. The Clarks claim that they wished to allow Jim Walter Homes to cure voluntarily the defects in the house, thus avoiding the burdens of litigation. They assert that only after they became convinced that Jim Walter Homes was not actually making good faith attempts to repair the house did they file this suit. During the deposition of Wavie Clark, counsel for the defendant referred to a line of correspondence between Jim Walter Homes and the Clarks stretching at least into mid–1985 over the subject of repairs made by the defendant and further complaints by the Clarks. The Clarks assert that they relied on Jim Walter Homes's alleged assurances at least into the two-year period preceding the filing of the complaint in Geneva County Circuit Court.

The thrust of the Clarks' argument is that Jim Walter Homes, by consistently leading them to believe that the perceived inadequacies of the house would be corrected, should be estopped on equitable grounds from relying on the statute of limitations to avoid scrutiny of its agent's alleged representations. Normally the timeliness of the plaintiff's case is determined by the diligence shown by the plain-

---

**5.** The statute as amended reads:

In actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have two years within which to prosecute his action.

§ 6–2–3.

tiff, without regard to the defendant's conduct. *Seybold v. Magnolia Land Co.*, 376 So.2d 1083, 1085 (Ala.1979). But,

> [w]hen the plaintiff alleges the defendant should be estopped from raising the defense of the statute of limitations, as the plaintiffs do in this case, then the actions of the defendant come into question. In general, conduct which is sufficient to give rise to an estoppel against the pleading of the statute of limitations must amount to an affirmative inducement to the plaintiff to delay bringing the action.

*Moore v. National Security Insurance Co., Inc.*, 477 So.2d 346, 348 (Ala.1985). *See also* 51 Am.Jur.2d *Limitation of Actions* § 439 (1970); 54 C.J.S. *Limitations of Actions* § 24 (1987). *Cf. Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1323–24 (11th Cir.1989) (setting out elements of equitable estoppel in case arising under federal law). Judging from the allegations of the Clarks in this case, the court is unable to conclude as a matter of law that equitable estoppel does not apply.

Jim Walter Homes appears to assume that the statute of limitations began to run as soon as the Clarks discovered facts suggesting problems or defects in the house. This is not the apposite starting point for the § 6–2–3 period, however. Rather, that period starts when the Clarks acquired notice of fraud. The problems existing in the house since 1983 do not, in and of themselves, constitute the fraud, for fraud is dependent on the actions of the defendant. *See Kenai Oil & Gas, Inc. v. Grace Petroleum Corp.*, 512 So.2d 1347, 1352 (Ala. 1987). *Cf. Dade County v. Rohr Industries, Inc.*, 826 F.2d 983, 989 (11th Cir.1987) (case involving Florida law) ("Attempted repairs do not toll the statute of limitations, but repairs coupled with deception may create an estoppel.").

> Fraud, in the nature of it, implies that the party has been misled and that, by the wrong of another, he is accepting and resting in a false sense of security. A party thus situated is not required to presume fraud or suspect it, until something comes to him leading a just person to suspect and make inquiry.

*Kenai Oil*, 512 So.2d at 1352 (*quoting Williams v. Bedenbaugh*, 215 Ala. 200, 110 So. 286, 289 (1926)).

The court is of the opinion that the question in this case of whether the statute of limitations bars the Clarks' fraud claim is properly one for the jury under Alabama law. The court does not here find as a matter of fact that Jim Walter Homes intended by its actions to induce the Clarks to delay bringing their action until after the limitations period had run. The court simply notes disputed issues of fact on which the question turns, and therefore denies summary judgment for Jim Walter Homes as to this claim, all other arguments pressed by Jim Walter Homes on the fraud count being meritless. *Id.* (reversing summary judgment for defendants in light of disputed issues of fact regarding estoppel). *See also Keefe*, 867 F.2d at 1323 (noting that "the constituent elements of estoppel constitute questions of fact").

### OUTRAGE CLAIM

■ The Clarks include in their complaint a claim based on Alabama's tort of outrage. Alabama recognizes this tort as expounded in the Restatement (Second) of Torts § 46 (1965).

> One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

*Id. See American Road Service Co. v. Inmon*, 394 So.2d 361, 362 (Ala.1980). On the facts of this case, it is clear to the court that the Clarks have not born their burden at this stage of the litigation of showing the existence of conduct on the part of Jim Walter Homes "so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community." *Barrett v. Farmers & Merchants Bank*, 451 So.2d 257, 263 (Ala.1984). The misconduct alleged by the Clarks in their briefs and complaint does not rise to the legal level required to maintain an outrage claim in

Alabama. Summary judgment in favor of the company is in order as to count five.

## SUMMARY

In this order, the court finds the breach of contract claims brought by the Clarks in counts one and seven extinguished by the legal effect of the unambiguous release signed by Wavie Clark in 1983. The court finds that the Magnuson–Moss Warranty Act does not apply to the warranties alleged by the Clarks in this case. The court also finds that the Clarks have not stated a cause of action under the tort of outrage as defined in Alabama. Summary judgment for Jim Walter Homes is proper at this time as to counts one, four, five and seven. The court rejects the defendant's arguments for summary judgment as to counts two, three and six.

Accordingly, it is ORDERED that defendant Jim Walter Homes's January 18, 1989, motion for summary judgment be and it is hereby granted as to counts one, four, five and seven of the plaintiffs' complaint, and denied in all other respects.