**Gary J. RHODE, Plaintiff,**

v.

**E & T INVESTMENTS, INC., d/b/a Best Value Homes; Brilliant Homes Corp., et al, Defendants.**

**No. Civ.A. 98–D–151–S.**

United States District Court, M.D. Alabama, Southern Division.

May 8, 1998.

**1324**

Michael S. Harper, Tallassee, AL, for Plaintiff.

Herman W. Cobb, Brian T. Mosholder, Dothan, AL, Algert S. Agricola, Jr., Montgomery, AL, Wade H. Baxley, Dothan, AL, David L. Selby, II, Birmingham, AL, for Defendants.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court is Defendants' Motion to Compel Arbitration, filed February 18, 1998. Plaintiff filed a Response to Defendants' Motion to Compel Arbitration ("Resp. to Mot. to Compel Arbitration") on April 8, 1997, and a Brief in opposition to Defendants' Motion to Compel Arbitration ("Br. in Opp'n") on April 10, 1998. Each Defendant filed a Reply to Plaintiff's Response on April 23, 1998. Plaintiff filed a Response to Defendant Brilliant Homes Corporation's Reply Brief on April 29, 1998 ("Resp. to Def. Brilliant Homes, Corp. Reply Br."). After careful consideration of the arguments of counsel, the relevant law and the record as a whole, the court finds that Defendants' Motion to Compel Arbitration is due to be granted in part and denied in part.

### JURISDICTION AND VENUE

The court properly exercises subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1441(c). The parties do not contest personal jurisdiction or venue.

### FACTUAL BACKGROUND

On December 12, 1996, Plaintiff Gary J. Rhode and Defendant E & T Investments, Inc. d/b/a/ Best Value Homes ("E & T Investments") entered into a Manufactured Home Retail Installment Contract ("Installment Contract") for the purchase of a manufactured home ("Home"). The Home purchased by Plaintiff through said Installment Contract was manufactured by Defendant Brilliant Homes Corporation ("Brilliant Homes"). The Installment Contract was assigned to Green Tree Financing Corporation.

Two arbitration provisions accompanied the sale of the Home. Paragraph 14 of the Installment Contract contains a provision mandating arbitration.[1] Additionally, accom-

---

**1.** Paragraph 14 of the Installment Contract states, in part:

ARBITRATION: ALL DISPUTES, CLAIMS OR CONTROVERSIES ARISING FROM OR RELATING TO THIS CONTRACT OR THE

panying the installment sales contract is a separate document, entitled "Arbitration Agreement," wherein "seller/lessor" Best Value Homes and "buyer/lessee" Gary Rhode essentially agree to arbitrate any and all disputes relating to the sale and financing of the mobile home.[2]

On January 7, 1998, Plaintiff commenced this action against Defendants in the Circuit Court of Dale County, Alabama, alleging, *inter alia*, breach of contract, breach of express and implied warranties, claims under the Magnuson–Moss Warranty–Federal Trade Commission Improvement Act, claims for negligent or wanton construction, installation and repair, violation of Alabama Code §§ 7–2–313, 7–2–314, 7–2–315, and fraud. Defendants removed the action to this court on February 11, 1998. Defendant E & T Investments filed an Answer on February 17, 1998, and Defendant Brilliant Homes filed an Answer on March 12, 1998. On February 18, 1998, Defendants filed this instant Motion to Compel Arbitration.

Defendants contend that all of Plaintiff's claims are governed by the two arbitration agreements executed between E & T Investments and Plaintiff on December 12, 1996. (Mot. to Compel ¶ 1.) Defendants contend that the agreements to arbitrate extend to Plaintiff's claims against Defendant Brilliant Homes, as these claims arise from the sale of the mobile home. (Mot. to Compel at ¶ 7.)

## DISCUSSION

Section 2 of the Federal Arbitration Act ("FAA") provides that a written agreement to arbitrate in a contract involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[3] 9 U.S.C.A. § 2. The effect of § 2 is "to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Section 3 provides for the stay of proceedings in feder-

PARTIES THERETO SHALL BE RESOLVED BY BINDING ARBITRATION BY ONE ARBITRATOR SELECTED BY YOU WITH MY CONSENT. THIS AGREEMENT IS MADE PURSUANT TO A TRANSACTION IN INTERSTATE COMMERCE AND SHALL BE GOVERNED BY THE FEDERAL ARBITRATION ACT AT 9 U.S.C. SECTION 1. JUDGMENT UPON THE AWARD RENDERED MAY BE ENTERED IN ANY COURT HAVING JURISDICTION. THE PARTIES AGREE AND UNDERSTAND THAT THEY CHOOSE ARBITRATION INSTEAD OF LITIGATION TO RESOLVE DISPUTES. THE PARTIES UNDERSTAND THAT THEY HAVE A RIGHT TO LITIGATE DISPUTES IN COURT BUT THAT THEY PREFER TO RESOLVE THEIR DISPUTES THROUGH ARBITRATION, EXCEPT AS PROVIDED HEREIN.

2. The Arbitration Agreement states, in part:

Buyer/lessee and dealer agree that all claims, demands, disputes, or controversies of every kind or nature that may arise between them concerning any of the negotiations leading to the sale, lease, or financing of the mobile home, terms and provisions of the sale, lease or financing of the mobile home, terms and provisions of the sale, lease or financing agreement, arrangements for financing, purchase of insurance, purchase of extended warranties or service contracts, the performance or condition of the mobile home, or any other aspects of the mobile home and its sale, lease or financing shall be settled by binding arbitration conducted pursuant to the provision of 9 U.S.C. Section 1 et seq. and according to the Commercial Rules of the American Arbitration Association. Without limiting the generality of the foregoing, it is the intention of the buyer/lessee and the dealer to resolve by binding arbitration all disputes between them concerning the mobile home, its sale, lease or financing, the condition of the mobile home, any damage to the mobile home, the terms and meaning of any of the documents signed or given in connection with the sale, lease or financing, and representations, promises or omissions made in connection with negotiations for the sale, lease or financing of the mobile home, or any terms, conditions, or representations made in connection with the financing, credit life insurance, disability insurance, and mobile home extended warranty or service contract purchased or obtained in connection with the mobile home.

3. The parties do not contest the question of whether Plaintiffs' contract in this action satisfies the nexus to interstate commerce requirement of the FAA. Accordingly, the court finds that for the purposes of this Memorandum Opinion and Order, Plaintiff's contract satisfies this jurisdictional prerequisite of the FAA. *See generally*, *Allied–Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995); *Staples v. Money Tree, Inc.*, 936 F.Supp. 856 (M.D.Ala.1996).

al district courts when an issue in the proceedings is referable to arbitration. 9 U.S.C.A. § 3. Section 4 provides for orders compelling arbitration when one party has failed, neglected, or refused to comply with an arbitration agreement. 9 U.S.C.A. § 4.

Whether an arbitration provision is enforceable, as opposed to the merits of the underlying dispute, is a question for the court. *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985); *Kelly v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 985 F.2d 1067 (11th Cir.1993). Any doubts about the scope of arbitrable issues should be resolved in favor of arbitration, even if the result is piecemeal litigation. *See Byrd,* 470 U.S. at 218–21, 105 S.Ct. 1238; *Moses H. Cone,* 460 U.S. at 24, 103 S.Ct. 927; *Kelly,* 985 F.2d at 1069.

In enacting the FAA, Congress manifested a "liberal federal policy favoring arbitration agreements." *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 25, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (quoting *Moses H. Cone,* 460 U.S. at 24, 103 S.Ct. 927). The Act's purpose "was to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." *Id.* at 24, 103 S.Ct. 927. Therefore, "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration," *Moses H. Cone,* 460 U.S. at 24, 103 S.Ct. 927, and courts must "rigorously enforce agreements to arbitrate." *Byrd,* 470 U.S. at 221, 105 S.Ct. 1238.

Even with this strong federal policy in mind, however, arbitration is a matter of contract, and a party cannot be compelled to arbitrate any claims which he or she has not agreed to submit to arbitration. *AT & T Technologies, Inc. v. Communications Workers of Am.,* 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). Accordingly, "as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 627, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). Section 2 of the FAA allows courts to give relief where the party opposing arbitration presents "well supported claims that the agreement to arbitrate resulted from the sort of fraud or overwhelming economic power that would provide grounds 'for the revocation of any contract.' " *Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 483–84, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989) (quoting *Mitsubishi Motors,* 473 U.S. at 627, 105 S.Ct. 3346; 9 U.S.C.A. § 2). Thus, § 2 "gives States ... method[s] for protecting consumers against unfair pressure to agree to a contract with an unwarranted arbitration provision" both in equity and under principles of contract law. *Allied–Bruce Terminix v. Dobson,* 513 U.S. 265, 281, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995).

Plaintiff bears the burden of demonstrating why the arbitration agreement in this action should not bind the parties, *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 225–26, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987), and raises several grounds as to why the court should not compel arbitration. Specifically, Plaintiff argues that the Arbitration Agreements are unenforceable with respect to his claims against Defendants because: (1) the agreements are contracts of adhesion; (2) the Magnuson–Moss Warranty Act prevents binding arbitration being imposed by a seller of goods on a consumer; and (3) the arbitration agreements are strictly between Plaintiff and Defendant E & T Investments, and not Defendant Brilliant Homes.

Because Plaintiff's contractual arguments are directed exclusively to the arbitration provisions, and not to the contract as a whole, the court may properly address these issues. *See Prima Paint Corp. v. Flood Conklin Mfg. Co.,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); *Wheat, First Securities, Inc. v. Green,* 993 F.2d 814 (11th Cir.1993).

I. *The Arbitration Agreements are not Unconscionable Contracts of Adhesion*

Plaintiff argues that the court should deny Defendants' Motion to Compel Arbitration on grounds that the arbitration agreements at issue are "nothing more than ... contract[s] of adhesion" resulting from

"greatly unequal bargaining power on the part of Defendants" and offered to a party with inferior bargaining power on a "take it or leave it basis." (Br. In Opp'n at 1.)

■■■] As noted earlier, " 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he [or she] has not agreed so to submit.' " *Goodwin v. Ford Motor Credit Co.*, 970 F.Supp. 1007, 1015 (M.D.Ala.1997) (quoting *AT & T Technologies, Inc.*, 475 U.S. at 648, 106 S.Ct. 1415). In making this determination, the court applies state law governing the formation of contracts, keeping in mind the strong federal policy favoring arbitration. *See First Options of Chicago v. Kaplan*, 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995); *Volt Info. Sciences v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989); *American Express Fin. Advisors v. Makarewicz*, 122 F.3d 936, 940 (11th Cir. 1997).

■■■ Contracts of adhesion are not ipso facto invalid. *See Roberson v. Money Tree of Alabama*, 954 F.Supp. 1519, 1526 n. 10 (M.D.Ala.1997) (Thompson, J.) (discussing the valid functions of contracts of adhesion in a rational economic model); *see also Rollins v. Foster*, 991 F.Supp. 1426, 1434 (M.D.Ala. 1998) (Thompson, J.). However, a finding that an arbitration clause is an unjust and unreasonable contract of adhesion might be grounds not to enforce the contract under the FAA. Rollins, 991 F.Supp. 1426, 1433 (citing *Ex parte Merrill Lynch, Pierce, Fenner & Smith*, 494 So.2d 1, 4 (Ala.1986)). Thus, while an arbitration clause in a contract is not unconscionable under Alabama law based merely on the fact that it is contained in a contract of adhesion, a plaintiff may avoid the arbitration clause by showing that the contract meets the elements of unconscionablity under Alabama law. *See Rollins*, 991 F.Supp. 1426, 1434.

■■■ Alabama law provides no explicit standard of unconscionablity; rather, the determination is fact specific. *Roberson*, 954 F.Supp. at 1525 (citing *E & W Bldg. Material v. American Savings & Loan Ass'n*, 648 F.Supp. 289, 290 (M.D.Ala.1986)). Generally, Alabama courts use the following four factors to determine whether a contract or contrac-

tual provision is unconscionable: (1) whether there is an absence of meaningful choice on one party's part; (2) whether contractual terms are unreasonably favorable to one party; (3) whether there was unequal bargaining power among parties; and (4) whether there were oppressive, one-sided, or patently unfair terms in the contract. *Rollins*, 991 F.Supp. 1426, 1434 (citing Layne v. Garner, 612 So.2d 404, 408 (Ala.1992); *Lloyd v. Service Corp.*, 453 So.2d 735, 739 (Ala.1984); *Crestline Center v. Hinton*, 567 So.2d 393 (Ala.Civ.App.1990); *Advertiser Co. v. Electronic Engineers*, 527 So.2d 1317 (Ala.Civ. App.1988)). *See also Taylor v. Leedy & Co., Inc.*, 412 So.2d 763, 765–66 (Ala.1982); Ala. Code 1975, § 5–19–16.

■■■ The court, examining an arbitration clause in light of these factors, must determine whether the arbitration clause is so unfavorable that it would not have been reasonable for the party seeking to avoid it to have knowingly accepted the clause, given any reasonable choice, and whether the plaintiff cannot obtain through arbitration the very same relief that would be otherwise available in a court action. *Rollins*, 991 F.Supp. 1426, 1434 (quoting Roberson, 954 F.Supp. at 1525). Further, a party may show that an arbitration provision is oppressive and one-sided, and therefore unconscionable, where the party who is in an inferior bargaining position is compelled to assert his or her claims in arbitration so as to preclude a remedy in a less expensive public fora, and the costs of arbitral forum render party unable to pursue his or her claim. *See Rollins*, 991 F.Supp. 1426, 1434–35. In addition, a party may avoid arbitration by asserting a "well-supported claim[ ]" that the agreement to arbitrate resulted from the sort of fraud or overwhelming economic power that would provide grounds 'for the revocation of any contract.' " *Gilmer*, 500 U.S. at 33, 111 S.Ct. 1647 (quoting Mitsubishi, 473 U.S. at 627, 105 S.Ct. 3346).

In the recent case of *Rollins v. Foster*, 991 F.Supp. 1426 (M.D.Ala.1998), Judge Thompson of this court addressed whether a party met its burden of showing that an arbitration provision met the elements of unconscionablity under Alabama law. There, the court

found that an arbitration clause in a contract between extermination companies and a customer was not unconscionable under Alabama law merely on the basis that it resulted in the loss of the customer's right to jury trial. *Id.* at 1435. Rather, the court stated that the customer must show that the arbitration clause itself was unconscionable, such that an arbitrator could not hear the plaintiff's claims against the companies or could not award the plaintiff the full panoply of relief available in state courts under Alabama law. *Id.* (citing Ala.Code 1975, § 5–19–16).

Furthermore, the court found that the plaintiff failed to demonstrate that the arbitration clause was unconscionable based on her inability to afford arbitration. *Id.* at 1434.The court based this finding on the fact that Plaintiff merely alleged that the arbitration costs ran to several thousand dollars a day and were prohibitive when compared to filing fee of $139 for civil suit in state court, yet did not present a full picture of her financial condition, give specific information about an arbitrator's fees, or allege difficulties in obtaining counsel for arbitration—all of which the court found were relevant to showing that she was effectively precluded from pursuing her claims through arbitration. *Id.* at 1438. In short, the court found that the plaintiff failed to provide the necessary evidentiary material to support the conclusion that the she was without recourse in any forum because she could not afford the costs of arbitration. *Id.* at 1437.

Here, as in *Rollins,* the court finds that Plaintiff fails to plead facts sufficient to show that the arbitration provisions at issue are unconscionable. Further, Plaintiff fails to provide any "well-supported claim" that the arbitration provision was procured by fraud or resulted from overwhelming economic power. *Gilmer,* 500 U.S. at 33, 111 S.Ct. 1647. Plaintiff merely states that "[t]his contract is one which results from greatly unequal bargaining power on the part of Defendants and is offered to a party with inferior bargaining power on a 'take it or leave it basis.'" (Br. in Opp'n at 1.) In support of this contention, Plaintiff states:

[A] dealer or manufacturer may argue that a consumer does not have to sign one of these oppressive arbitration agreements if they wish to purchase a mobile home.

However, if all manufacturers and dealers require the execution as a condition precedent to closing the sale, the consumer is put into the unenviable position of either having to acquiesce to the seller's will or live in a tent.

(Br. in Opp'n at 3.) Thus, Plaintiff argues, the arbitration provisions were not "clearly bargained for." (*Id.*)

The court finds that Plaintiff's allegations are insufficient to show that the arbitration clauses are unconscionable. Specifically, Plaintiff fails to allege any facts to support the finding that arbitration would preclude plaintiff from bringing his claims against Defendants or that an arbitrator could not award full panoply of relief available in under Alabama law. *See Paladino v. Avnet Computer Technologies, Inc.,* 134 F.3d 1054, 1060–1062 (11th Cir.1998) (Cox, J., concurring); *Rollins,* 991 F.Supp. 1426, 1434. Furthermore, the court finds that Plaintiff fails to allege any facts which demonstrate that he is unable to afford arbitration. *See Rollins,* 991 F.Supp. 1426, 1435. Rather, Plaintiff merely offers the conclusory allegation that the arbitration clause was offered on a "take it or leave it" basis. (Br. in Opp'n at 3.) "A party cannot rely on an abstract principle or theory of unfairness of a bargain to make a case for unconscionablity; it must still be gauged by the actual circumstances of the case, and not in the abstract." *Goodwin v. Ford Motor Credit Company,* 970 F.Supp. 1007, 1013 (M.D.Ala.1997); *see also Rainbow Investments v. Super Eight Motels, Inc.,* 973 F.Supp. 1387, 1389–1390 (M.D.Ala.1997) (parties must present the court with evidentiary facts that tend to show the existence of grounds at law or in equity to support the revocation of the arbitration agreement). Thus, without more, the court is unable to find that the arbitration provisions at issue here are unconscionable.

II. *The arbitration agreements are between Plaintiff and Defendant E & T Investments, but not Defendant Brilliant Homes.*

█] Plaintiff urges the court to deny Defendants' Motion to Compel Arbitration on grounds that the arbitration agreements at

issue are strictly between Plaintiff and Defendant E & T Investments, and not Brilliant Homes. Specifically, Plaintiff states that the arbitration provisions are unenforceable with respect to Plaintiff's claims against Defendant Brilliant Homes because: (1) the manufacturer, Brilliant Homes, was not a signatory to either of the arbitration agreements; (2) the language of the arbitration agreements is not sufficiently broad to allow the manufacturer—as a non-signatory—to enforce either; and (3) the dealer was neither an agent of the manufacturer Brilliant Homes nor was Brilliant Homes a third party beneficiary of the agreement between the dealer and the buyer. (Resp. to Defs.' Mot. to Compel Arbitration ¶¶ 2–4.)

The Alabama Supreme Court has recently addressed the issue of whether a nonsignatory to an arbitration agreement has of whether a nonsignatory to an arbitration agreement has standing to compel arbitration in accordance with the agreement. In *Ex parte Isbell v. Southern Energy Homes, Inc.*, 708 So.2d 571 (Ala.1997), a buyer of a manufactured home brought claims of breach of warranty, breach of contract, negligence, and fraud against the manufacturer of the home, the seller of the home, and the seller's agent. The Alabama Supreme Court held that the manufacturer, who was not a signatory to the installment contract containing an arbitration provision, could not rely on the clause to compel arbitration. *Isbell*, 708 So.2d at 580.

In reaching this holding, the court rejected the manufacturer's equitable estoppel argument. Despite not being a signatory to the installment contract, the manufacturer sought to compel arbitration based on the theory that the plaintiff's claims against the manufacturer were "founded on and intertwined with a contract containing an arbitration clause," and thus the plaintiff was equitably estopped from arguing that the arbitration clause didn't apply to the buyer's claims against the manufacturer. *Isbell*, 708 So.2d 571, 574. The court rejected the argument in the context of the case before it, thereby distinguishing it from the Eleventh Circuit's holding in *McBro Planning & Development Co. v. Triangle Electrical Construction Co.*, 741 F.2d 342 (11th Cir.1984). *Isbell*, 574–75. In *McBro*, the Eleventh Circuit held that a nonsignatory to an arbitra-

tion agreement could compel arbitration pursuant to the agreement on the theory that the nonsignatory was a third party beneficiary to the agreement. *McBro*, 741 F.2d at 343. The *Isbell* court distinguished the case before it from *McBro* on the basis that the parties and contracts at issue in *McBro* were characterized by a "close relationship of the three entities [there] involved ... and the close relationship of the alleged wrongs to McBro's contractual duties to perform." *Isbell* 708 So.2d 571, 1997 WL 679418, at * 5 (quoting *McBro*, 741 F.2d at 343).

The *Isbell* court, in finding the case before it distinct from the facts in *McBro*, also found the case before it analogous to *Wilson v. Waverlee Homes, Inc.*, 954 F.Supp. 1530 (M.D.Ala.1997), aff'd 127 F.3d 40 (11th Cir. 1997). There, Judge Thompson of this court found that the manufacturer of a mobile home had no standing to enforce an arbitration agreement contained in a contract between the retail seller and the buyer—a contract to which the manufacturer was not a signatory. *Waverlee Homes*, 954 F.Supp. at 1537. The court in *Waverlee Homes* recognized that there are instances where nonsignatories to arbitration clauses may be equitably compelled to pursue their claims against a defendant in arbitration, or where ordinary contract and agency principles require that nonsignatories be bound by arbitration provisions. *Waverlee Homes*, 954 F.Supp. at 1534. However, in the case before it, the court found that there was no agency relationship between the mobile home seller and the manufacturer, and the doctrine of equitable estoppel was inapplicable where the buyer had a distinct and separate warranty agreement with the manufacturer. *Id.* at 1534–35. In examining whether the agreement between the plaintiff and the manufacturer was distinct and separate from that between the plaintiff and the seller, sufficient to reject the doctrine of equitable estoppel, the court stated:

> It is not enough that the defendant and the third party have common and parallel duties toward the plaintiff, and so could both be sued on the same theory of tort. Thus, it is not determinative that the plaintiffs here could have chosen to sue Hart's

Mobile Home on some of the liability theories raised in their complaints, but did not. What matters is that none of the duties the plaintiffs are claiming that Waverlee breached arose under and were assigned to it by the sales agreements governed by an arbitration clause here. The warranty claims were not intertwined with and founded upon the sales installment agreements, except in the utterly collateral sense that if the plaintiffs had never purchased their mobile homes, they would not have been protected by the warranties that came with them.

*Waverlee Homes,* 954 F.Supp. at 1536–37; *see also Isbell,* 708 So.2d 571, 1997 WL 679418, at * 8. Accordingly, the court in *Waverlee Homes* found that the manufacturer had no standing to compel arbitration pursuant to the arbitration agreement to which it was not a signatory. *Waverlee Homes,* 954 F.Supp. at 1537.

Relying heavily on the court's conclusions in *Waverlee Homes,* the *Isbell* court stated that the theory of equitable estoppel is applicable with regards to a nonsignatory manufacturer only where a plaintiff alleges that the installment contract with the seller imposes certain duties of performance upon the manufacturer. *Isbell,* 708 So.2d 571, 577. In such a case, the buyer is equitably estopped from asserting both the right to receive performance under the contracts and at the same time the right to deny application of the arbitration clause governing disputes under those contracts. *Isbell,* 708 So.2d 571, 577. However, where the plaintiff brings his or her claims under a **separate** and distinct warranty agreement that contains no arbitra-

tion clause, the plaintiff is not estopped from arguing that the manufacturer is unable to compel arbitration pursuant to arbitration clauses contained in a separate installment sales contract. *Isbell,* 708 So.2d 571, 577; *Waverlee Homes,* 954 F.Supp. at 1536–37.

Here, as in *Isbell* and *Waverlee Homes,* Plaintiff alleges that his claims against Brilliant Homes arise out of a separate written warranty issued to Plaintiff by Brilliant Homes, and not out of the original Installment Contract signed by E & T Investments and Plaintiff and assigned to Greentree Financial Corporation of America. (Resp. to Def. Brilliant Homes Corp. Reply Br. at 1; Compl. ¶ 11.) Although no physical evidence of the separate agreement between Plaintiff and Brilliant Homes has been presented to the court, Plaintiff's allegation that such an agreement exists is sufficient, especially in this case, where the Installment Contract that is present in the record makes no mention at all of Brilliant Homes, the manufacturer. *Isbell,* 708 So.2d 571, 577.[5]

The Installment Contract present in the record is remarkably similar to that at issue in *Isbell.* The Contract, entitled "Manufacturer Home Retail Installment Contract and Security Agreement," contains the terms of the sale between: (1) the buyer, Mr. Rhode; (2) the seller, E & T Investments; and (3) Green Tree Financial Corporation, to which the contract was assigned. The contract sets forth the amount of the sale financed, the finance charge, the annual percentage rate, and the total sale price after financing charges are added. Further, it provides for physical damage insurance and optional cred-

---

**5.** Furthermore, the court notes that the Best Value Homes purchase agreement, a one-page front and back document signed by Plaintiff and attached as Exhibit 3 to Defendant E & T Investment's Response to Plaintiff's Opposition to Defendants' Motion to Compel Arbitration, contemplates the existence of a separate warranty agreement between the manufacturer of the mobile home and the buyer. Specifically, in the Agreement, under the heading "Optional Equipment, Labor and Accessories," is the statement "Price includes 1 year Mfg. Warranty." (Ex. 3, Resp. to Pl.'s Opp'n to Defs.' Mot. to Compel Arb.) Further, Paragraph 11 under "Additional Terms and Conditions" states the following:

MANUFACTURERS WARRANTIES. I UNDERSTAND THAT THERE MAY BE WRIT-

TEN WARRANTIES COVERING THE UNIT PURCHASED ... WHICH HAVE BEEN PROVIDED BY THE MANUFACTURER OF THE UNIT.... I ACKNOWLEDGE THAT THESE EXPRESS WARRANTIES MADE BY THE MANUFACTURER(S) HAVE NOT BEEN MADE BY YOU EVEN IF THEY SAY YOU MADE THEM OR SAY YOU MADE SOME OTHER EXPRESS WARRANTY. YOU ARE NOT AN AGENT OF THE MANUFACTURER(S) FOR WARRANTY PURPOSES EVEN IF YOU COMPLETE, OR ATTEMPT TO COMPLETE REPAIRS FOR THE MANUFACTURER(S).

(Ex. 3, Resp. to Pl.'s Opp'n to Defs.' Mot. to Compel Arb.)

it life and disability insurance. Paragraph 7 of the Contract disclaims all warranties.

Hence, the court finds that the basis for Plaintiff's claims against Brilliant Homes are analogous to those against the manufacturers in *Isbell* and *Waverlee Homes*. In this case, as in those, the warranty claims which Plaintiff asserts against the Home's manufacturer "are not intertwined with and founded upon the sales installment agreement[ ], except in the utterly collateral sense that if the plaintiff[ ] had never purchased [his] mobile home[ ], [he] would not have been protected by the warranties that came with [it]." *Waverlee Homes*, 954 F.Supp. at 1536; *Isbell*, 708 So.2d 571, 577. Accordingly, the court finds that Plaintiff's claims against the manufacturer are based on allegations that the manufacturer has breached certain warranties on the home, and that the manufacturer has issued to the buyer a warranty distinct from that issued to the buyer by the seller.

Because Plaintiff's claims against the manufacturer are based on an agreement separate and distinct from that which forms the basis of Plaintiff's complaint against the seller, the court finds that Plaintiff is not estopped from arguing that an arbitration agreement included in the installment contract with the seller does not apply to the buyer's claims against the manufacturer. Here, as in *Waverlee Homes* and *Isbell*, the court finds that the facts of the instant case do not support an exception to the assertion that " '[a]n entity that is neither a party to nor agent for nor beneficiary of the contract lacks standing to compel arbitration.' " *Waverlee Homes*, 954 F.Supp. at 1537 (quoting *Britton v. Co-op Banking Group*, 4 F.3d 742, 744 (9th Cir.1993)); *Isbell*, 708 So.2d 571, 577. Accordingly, the court finds that Defendant's Motion to Compel Arbitration with respect to Plaintiff's claims against Defendant Brilliant Homes is due to be denied.

III. *Magnuson–Moss Warranty Act Precludes Arbitration-on Some of Plaintiff's Claims.*

█ Finally, as a further basis for urging the court to deny Defendants' Motion to Compel Arbitration, Plaintiff argues that the Magnuson–Moss Warranty Act and the regulations issued pursuant to the Act by the Federal Trade Commission prevent binding arbitration to be imposed by a seller of goods on a consumer. (Br. in Opp'n at 4 .) Plaintiff relies on *Wilson v. Waverlee Homes*, 954 F.Supp. 1530 (M.D.Ala.1997), in support of this argument.

The Magnuson–Moss Warranty–Trade Commission Improvement Act, 15 U.S.C.A. § 2301–2312 ("Magnuson–Moss Warranty Act"), was enacted to "improve the adequacy of information available to consumers, [and] prevent deception." *Waverlee Homes*, 954 F.Supp. at 1537 (quoting 15 U.S.C.A. § 2302(a)). The Act delineates clear and comprehensive requirements regarding disclosures, duties and remedies associated with warranties on consumer products. *Waverlee Homes*, 954 F.Supp. at 1537.

█ The FAA's mandate that agreements to arbitrate statutory claims must be enforced may be overridden by a statute evincing a contrary congressional mandate. *McMahon*, 482 U.S. at 226, 107 S.Ct. 2332. In *Waverlee Homes*, the court analyzed highly detailed and specific provisions of the Magnuson–Moss Act and concluded that Congress intended to preclude binding arbitration of written or express warranty claims arising under the Act. *Waverlee Homes*, 954 F.Supp. at 1537–1539. In *Boyd v. Homes of Legend, Inc.*, 981 F.Supp. 1423 (M.D.Ala. 1997) (Thompson, J.), however, the court concluded that *non-written and implied* warranty claims arising under the Magnuson–Moss Act could be subject to arbitration. *Boyd*, 981 F.Supp. at 1440. Hence, in *Boyd*, the court ordered arbitration of non-written and implied warranty claims under the Magnuson–Moss Act, *Boyd*, 981 F.Supp. at 1440, even though it declined to do so for written warranties in *Waverlee Homes*. *Waverlee Homes*, 954 F.Supp. at 1537–39. The Eleventh Circuit recently affirmed the court's decision in *Waverlee Homes*. *Wilson v. Waverlee Homes*, 127 F.3d 40 (11th Cir. 1997). Further, the court finds *Boyd* to be soundly reasoned and adopts and incorporates the court's conclusions herein. Thus, both *Waverlee Homes* and *Boyd* control the court's findings in the matter currently before it.

Count IV of Plaintiff's Complaint states a claim for breach of both express and implied warranties under the Magnuson–Moss Warranty Act. (Compl.¶¶ 20–26.) In urging the

court to reject Plaintiff's argument that binding arbitration of Plaintiff's Magnuson–Moss Act warranty claims is precluded, Defendant E & T Investments states that *Waverlee Homes* is inapplicable, as Defendant E & T has made no written warranties with respect to the mobile home at issue. (Resp. to Pl.'s Opp. to Defs.' Mot. to Compel Arb. at 4.) Indeed, Paragraph 7 of the Installment Contract disclaims all warranties other than those implied warranties that cannot be avoided by law. The paragraph states, in part:

> I agree that there are no warranties of any type covering the Manufactured Home. I am buying the Manufactured Home AS IS and WITH ALL FAULTS and THE ENTIRE RISK AS TO THE QUALITY AND PERFORMANCE OF THE MANUFACTURED HOME IS WITH ME. I agree that any implied warranty of merchantibilty and any implied warranty of fitness for a particular purpose are specifically excluded and do not cover the Manufac-

tured Home. This No Warranties provision does not apply to the extent that the law prohibits it and does not cover any separate written warranties.

The court construes Defendants' argument as challenging the *merits* of Plaintiff's claims against Defendant E & T Investments for breach of express warranty, rather than addressing Plaintiff's argument that binding arbitration of Magnuson–Moss Act claims is precluded. The court finds that a Response to Plaintiff's Opposition to Defendants' Motion to Compel Arbitration is not the appropriate mechanism for challenging the merits of Plaintiff's claims of breach of express warranties. Accordingly, based on the foregoing, the court finds that Defendants' Motion to Compel Arbitration with respect to Plaintiff's claims against Defendant E & T Investments is due to be granted, with the limited exception that Plaintiff is not compelled to arbitrate any claims for breach of written or express warranties she may have against Defendant E & T Investments.[6]

---

**6.** The court notes the recent Eleventh Circuit opinion in *Paladino v. Avnet Computer Technologies, Inc.,* 134 F.3d 1054 correctly refused to compel arbitration of plaintiff's Title VII claim pursuant to an arbitration agreement on grounds that the arbitration clause deprived the employee of any prospect for meaningful relief. *Paladino,* 134 F.3d at 1060.

The court based its holding on the proposition that, when an arbitration clause has provisions that defeat the remedial purpose of the statute, the arbitration clause is unenforceable. *Paladino,* 134 F.3d at 1062 (citing *Cole v. Burns Int'l Sec. Services,* 105 F.3d 1465, 1468 (D.C.Cir. 1997)). Specifically, the court examined two provisions of the arbitration clause at issue in that case and held that the provisions, read together, made plaintiff's Title VII claims subject to arbitration, yet circumscribed the arbitrator's authority to grant relief for those claims. *Id.* at 1061. The court found that, by precluding relief for the Title VII claims, these provisions violated the remedial purpose of Title VII, thereby rendering the arbitration clause unenforceable. *Id.* at 1062.

The court also stated that arbitration would impose a "hefty cost" on the Plaintiff, thereby further violating the remedial purpose of Title VII. *Id.* The court stated:
> The difficulty of obtaining meaningful relief is not, moreover, the only infirmity of this clause. Because [the employer] makes no promises to pay for an arbitrator, employees may be liable for at least half the hefty cost of an arbitration and must, according to the American Arbitration Association rules the clause explicitly

adopts, pay steep filing fees (in this case $2000). One circuit has in dicta stated that such "fee-shifting" is a per se basis for nonenforcement. *Cole,* 105 F.3d at 1484. We consider costs of this magnitude a legitimate basis for a conclusion that the clause does not comport with statutory policy.... [A] clause such as this one that deprives an employee of any hope of meaningful relief, while imposing high costs on the employee, undermines the policies that support Title VII. It is not enforceable.
*Paladino,* 134 F.3d at 1062.

As the court states, *infra,* The Magnuson–Moss Act—pursuant to which Plaintiff brings several of his claims—was passed with purpose of improving the adequacy of information to consumers and preventing consumer deception. Congress's overall goal in the Act is to protect consumers from unfair written warranties. *Boyd v. Homes of Legend,* 981 F.Supp. 1423, 1438 n. 11 (M.D.Ala.1997) (Thompson, J.) Based on the Eleventh Circuit's recent holding, an argument could be made that, by requiring consumers to absorb the costs of arbitration, arbitration provisions incorporating the rules of the American Arbitration Association may, in fact, undermine the statutory policy of the Magnuson–Moss Act, thereby depriving a consumer of meaningful relief of his or her Magnuson–Moss Act warranty claims and rendering the Arbitration Provision unenforceable. Such an assertion, however, would require a detailed and carefully researched analysis of the remedial purposes of the Magnuson–Moss Act and the effect of requiring consumers to pay money, the amount of which must be calculated in accordance with the appli-

## ORDER

Based on the foregoing, it is CONSIDERED and ORDERED that Defendants' Motion to Compel Arbitration be and the same is hereby GRANTED in part and DENIED in part, as follows:

(1) Defendants' Motion to Compel Arbitration is DENIED with respect to Plaintiff's claims against Defendant Brilliant Homes, as well as Plaintiff's claims against Defendant E & T Investments for breach of express warranties under the Magnuson–Moss Warranty Act.

(2) Defendants' Motion to Compel Arbitration is GRANTED with respect to Plaintiff's remaining claims against Defendant E & T Investments.

(3) The parties are DIRECTED to proceed with arbitration on said claims in accordance with the terms of the agreement.

(4) Pursuant to 9 U.S.C. § 3, the court STAYS all proceedings on Plaintiff's claims against Defendant E & T Investments, save those arising out of Plaintiff's claims for breach of express warranties under the Magnuson–Moss Warranty Act, pending outcome of arbitration. Proceedings on the remaining claims against E & T Investments and Brilliant Homes, will continue in this court.

cable rules of the American Arbitration Association, in order to effectuate arbitration and obtain meaningful relief. The court explicitly notes that this issue is not raised by the pleadings, and thus is not currently before it. Hence, the court makes no findings to this effect, at this time.