### In re James L. VAN BLARCUM and Clara M. Van Blarcum.

#### No. 13–99–281–CV.

Court of Appeals of Texas, Corpus Christi.

April 6, 2000.

Rehearing Overruled June 29, 2000.

---

Stephen Gardner, Judith A. Shephard, Attorneys at Law, Dallas, Amicus curiae.

L. Scott Smith, Law Office L. Scott Smith, Corpus Christi, for Relator.

Jay K. Rutherford, Jackson & Walker, L.l.p., Fort Worth, Michael P. Ridulfo, Daniel, Anderson, Lehrman, Maixner & Ridulfo, Corpus Christi, for Real Parties In Interest.

Before: The Court En Banc.

## OPINION

Justice YAÑEZ delivered the Opinion of the Court, in which Justices DORSEY and HINOJOSA joined.

In this original mandamus proceeding, relators James and Clara Van Blarcum ("the Van Blarcums") request this Court to direct the respondent, Judge Marisela Saldaña, to vacate her order of February 2, 1999 compelling binding arbitration of disputes arising from relators' purchase of a mobile home. We conditionally grant the writ.

In the underlying proceeding, the Van Blarcums filed suit against the mobile home manufacturer, American Homestar of Lancaster, Inc. ("Homestar"); the retailer, Nationwide Housing Systems, Inc. ("Nationwide"); and the finance company, Associates Housing Finance Services, Inc. d/b/a Ford Housing Finance Services ("Associates"),[1] alleging, *inter alia*, violations of the Texas Deceptive Trade Practices— Consumer Protection Act ("DTPA"),[2] the Texas Manufactured Housing Standards Act,[3] and breach of express and implied warranties. Anticipating that defendants would move to compel arbitration, they also requested a stay of arbitration, alleging the arbitration agreement they executed in connection with purchasing the home is void and unenforceable because it violates the Magnuson–Moss Warranty Act ("the Act").[4]

This proceeding presents questions of first impression in Texas: (1) whether under the Act, a warrantor is prohibited from requiring the use of binding arbitration to resolve claims arising under written warranties for consumer goods pursuant to an arbitration agreement signed at the time of purchase, and (2) whether the trial court's decision in relying on the Federal Arbitration Act (FAA) and its general mandate favoring arbitration to give effect to the arbitration agreement compelling binding arbitration of claims arising under a written warranty was an abuse of discretion.

By two issues, the Van Blarcums contend the trial court's decision compelling arbitration was an abuse of discretion because: (1) the Act precludes binding arbitration of consumer warranty disputes and (2) by requiring the Van Blarcums to bear the costs of arbitration, the arbitration agreement effectively deprives them of a forum for resolving disputes and is therefore unconscionable.

---

1. Homestar, Nationwide, and Associates are real parties-in-interest in the present proceeding.

2. Tex.Bus. & Com.Code Ann. §§ 17.41–63 (Vernon 1987 & Supp.2000)

3. Tex.Rev.Civ.Stat.Ann. art. 5221(f) § 14 (Vernon Supp.2000).

4. 15 U.S.C.A. § 2301–12 (2000).

## Facts

On May 23, 1997, the Van Blarcums and Nationwide executed a Retail Installment Contract–Security Agreement ("the Contract") for the purchase of a mobile home in Corpus Christi, Texas. At the same time, and as part of the Contract, they executed with Nationwide a separate Arbitration Agreement ("the Agreement"). The Agreement specified that "all claims, disputes, and controversies arising out of or relating in any way to the sale, purchase, or occupancy of the [mobile home] including ... any claims under any warranties ... [would] be resolved by means of final and binding arbitration." The Agreement also provided it "inures to the benefit of ... the manufacturer of the Home ... as fully as if the manufacturer was a signatory to the Retail Installment Contract" and "to the benefit of ... any lender or mortgagee ... who provides financing for the purchase of the Home." At the time of purchase, the Van Blarcums were provided with a retailer's written warranty by Nationwide. The mobile home was also covered by a separate written warranty by Homestar, which was not provided.

Subsequent to the purchase and installation of the mobile home, the Van Blarcums notified Nationwide and Homestar of various defects in its construction and installation. Despite receiving assurances that the deficiencies would be remedied, numerous complaints remained unsatisfied nine months after the Van Blarcums first requested that warranty repairs be made. On or about July 31, 1998, the Van Blarcums filed an action in County Court–at–Law Number Three, Nueces County, Texas, seeking, *inter alia*, declaratory and injunctive relief, damages, and a stay of arbitration. Nationwide and Homestar filed a motion to compel binding arbitration of the Van Blarcums' claims, arguing

that the Agreement must be given effect under both the Federal Arbitration Act (FAA)[5] and the Texas Arbitration Act (TAA),[6] and that their dispute with the Van Blarcums was encompassed within the terms of the Agreement. Following a hearing on February 2, 1999, Judge Saldaña ordered the parties to proceed to arbitration in accordance with the terms of the Agreement, and stayed litigation of the suit pending resolution of the matter by the arbitrator. Thereafter, the Van Blarcums filed a Motion for Reconsideration, which the trial court denied following a second hearing on April 15, 1999.

## The Real Parties' Jurisdictional Challenges

▮ Before addressing the Van Blarcums' issues, we must first consider the real parties' jurisdictional challenges. Real parties assert this Court lacks jurisdiction over the trial court's order compelling arbitration pursuant to the TAA because mandamus is not an appropriate remedy under the TAA. Real parties contend the motion to compel was urged pursuant to both the FAA and the TAA, and because it was granted in its entirety, mandamus is improper as to "that aspect" of the order under the TAA.

▮ In support of their argument that mandamus relief is unavailable under the TAA, real parties cite *Jack B. Anglin Co. Inc. v. Tipps*, 842 S.W.2d 266, 272 (Tex. 1992). Real parties' reliance on *Anglin* is misplaced. In *Anglin*, the supreme court, in reviewing a trial court's order *denying* a motion to compel arbitration, held mandamus relief is available when a trial court improperly *denies* a party's motion to compel arbitration brought under the FAA. *Id.* at 272–73. In *dicta*, the court stated that "[b]oth the Texas and Federal Acts permit a party to appeal from an interlocutory order granting or denying a request to compel arbitration." *Id.* at 271–72.[7] At

---

5.  *See* 9 U.S.C.A. § 1 *et seq.* (2000).

6.  *See* Tex.Civ.Prac. & Rem Code §§ 171.001–098 (Vernon 1997 and Supp.2000).

7.  At the time *Jack B. Anglin Co. Inc. v. Tipps*, 842 S.W.2d 266, 272 (Tex.1992) was decided, article 238–2 of the Texas Arbitration Act governed the appealability of interlocutory orders

issue in the present case is an order by the trial court *granting* real parties' motion to compel arbitration. We therefore reject real parties' argument that *Anglin* is applicable to the facts before us.

■ We need not, however, determine, whether mandamus relief is available under the Texas Act because the Agreement specifically provides arbitration "shall be governed by the provisions of the Federal Arbitration Act and the rules of the AAA [American Arbitration Association]." The parties may designate which arbitration act they wish to control proceedings under the contract, and the courts will honor that choice. *See D. Wilson Constr. Co. v. Cris Equipment Co.,* 988 S.W.2d 388, 392 n. 3 (Tex.App.—Corpus Christi 1999, orig. proceeding [leave requested]). Moreover, the FAA applies to all claims arising from a transaction involving interstate commerce, 9 U.S.C.A. § 2 (2000), and it is undisputed that the sale of the mobile home "involves" commerce. We conclude the transaction "involves" commerce. *See Allied–Bruce Terminix Cos. v. Dobson,* 513 U.S. 265, 272–75, 276–78, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995); *L & L Kempwood Assocs., L.P. v. Omega Builders, Inc.,* 9 S.W.3d 125, 127 (Tex. 1999). Accordingly, for purposes of determining jurisdiction, we view the order

compelling arbitration as issuing pursuant to the FAA.

The FAA declares written provisions for arbitration "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C.A. § 2 (2000). The Van Blarcums claim the Agreement is invalid and unenforceable because it requires binding arbitration of written warranty claims in violation of the Magnuson–Moss Act.

■ Mandamus is the proper remedy for an order compelling arbitration under the FAA. *Freis v. Canales,* 877 S.W.2d 283, 284 (Tex.1994); *Turford v. Underwood,* 952 S.W.2d 641, 643 (Tex.App.—Beaumont 1997) (orig.proceeding). Mandamus will issue only to correct a clear abuse of discretion or the violation of a duty imposed by law when there is no other adequate remedy by law. *Walker v. Packer,* 827 S.W.2d 833, 839–40 (Tex.1992) (orig.proceeding). A clear abuse of discretion occurs when the court's decision on a factual issue is so arbitrary and capricious to amount to clear error or is a violation of legal duty. A clear abuse of discretion also exists with any error in analyzing or applying the law. *Id.* A party who is compelled to arbitrate without having

---

granting or denying motions to compel arbitration. Act of May 29, 1965, 65th Leg., R.S., ch. 689, § 1, 1965 Tex.Gen.Laws 1593, 1593, *redesignated by* Act of May 26, 1995, 74th Leg., R.S., ch. 588, § 1, 1995 Tex.Gen.Laws 3402, 3402, *revised by* Act of May 8, 1997, 75th Leg., R.S., ch. 165, § 5.01, sec. 171.098, 1997 Tex.Gen.Laws 329, 336 (current version at Tex.Civ.Prac. & Rem.Code Ann. 171.098(a) (Vernon Supp.2000)). Except for redesignation, the provisions remain essentially unchanged.

Section 171.098 of the TAA currently provides:

(a) A party may appeal a judgment or decree entered under this chapter or an order:
(1) *denying* an application to compel arbitration made under Section 171.021;
(2) *granting* an application to *stay* arbitration made under Section 171.023;
(3) confirming or denying confirmation of an award;

(4) modifying or correcting an award; or
(5) vacating an award without directing a rehearing.

Tex.Civ.Prac. & Rem.Code Ann 171.098(a) (Vernon Supp.2000) (emphasis supplied). Thus, we conclude, as have several of our sister courts, that, contrary to the *dicta* in *Anglin,* the Texas statute does *not* provide for any type of appeal from an order *compelling* arbitration. *See, e.g., Lipshy Motorcars, Inc. v. Sovereign Assocs.,* 944 S.W.2d 68, 69–70 (Tex. App.—Dallas 1997, no writ) (holding an order compelling arbitration under the Texas Act is not appealable and declining to follow *dicta* in *Anglin*); *Elm Creek Villas Homeowner Ass'n, Inc. v. Beldon Roofing,* 940 S.W.2d 150, 154 (Tex.App.—San Antonio 1996, no writ) (same); *Gathe v. Cigna Healthplan of Texas, Inc.,* 879 S.W.2d 360, 362 (Tex.App.—Houston [14th Dist.] 1994, writ denied) (same).

agreed to do so will have lost its right to have the dispute resolved by litigation and has no adequate remedy by appeal. *Freis,* 877 S.W.2d at 284. Absent a valid agreement between the parties to arbitrate the claims at issue, there is no obligation to arbitrate. *Id.* If arbitration is ordered without such an agreement, the trial court has abused its discretion in ordering the arbitration. *Id.*

## Magnuson–Moss Act Overrides Federal Arbitration Act

■ In their first issue, the Van Blarcums contend the trial court abused its discretion in compelling arbitration because under the Act, a consumer cannot be compelled to submit a claim to binding arbitration when the consumer purchases a product covered by written manufacturer and retailer warranties. Real parties contend, however, that because nothing in the Act's text, legislative history, or purpose precludes arbitration, the FAA, rather than the Act, is controlling.

■ Congress passed the FAA in 1925. The FAA 's "primary purpose" is to ensure "that private agreements to arbitrate are enforced according to their terms." *Volt Info. Sciences, Inc. v. Board of Trustees,* 489 U.S. 468, 479, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989); *Solis v. Evins,* 951 S.W.2d 44, 48 (Tex.App.—Corpus Christi 1997, writ denied). The U.S. Supreme Court has stated, however, that "[l]ike any statutory directive, the [FAA's] mandate may be overridden by a contrary congressional command." *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 226, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987). The burden is on the party opposing arbitration to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue. *Id.* at 227, 107 S.Ct. 2332. Such Congressional intent can be gleaned from the statute's text or legislative history, or from an inherent conflict between the

FAA's endorsement of arbitration and the statute's underlying purposes. *Id.* The *McMahon* test for determining whether to enforce arbitration agreements involving statutory claims has been stated as follows:

> ... for a statutory claim to not be arbitrable, the party opposing arbitration must demonstrate that Congress intended to prohibit or limit waiver of the judicial forum. If the party is unable to do so, then it must demonstrate that an "inherent conflict" exists between the FAA and the statute's underlying purposes.

*Knepp v. Credit Acceptance Corp. (In re Knepp),* 229 B.R. 821, 833 (Bankr.N.D.Ala. 1999).

In 1974, Congress passed the Magnuson–Moss Act "to improve the adequacy of information available to consumers, [and] prevent deception." 15 U.S.C.A. § 2302(a) (2000). The Act sets out specific requirements regarding disclosures, duties and remedies associated with warranties on consumer products.[8] Under the Act, any consumer who is damaged by a warrantor's failure to comply with an obligation under a written or implied warranty or service contract may "bring suit for damages and other legal and equitable relief." 15 U.S.C.A. § 2310(d)(1) (2000).

■ Where an irreconcilable inconsistency is encountered between statutory provisions, the more recently enacted and more specific statute covering a specific subject controls over the earlier and more general one, unless there is evidence of a clear legislative intent to the contrary. *See HCSC–Laundry v. United States,* 450 U.S. 1, 6, 101 S.Ct. 836, 67 L.Ed.2d 1 (1981); *Balfour Beatty Bahamas, Ltd. v. Bush,* 170 F.3d 1048, 1050 (11th Cir.1999); *ICC v. Southern Ry. Co.,* 543 F.2d 534, 539 (5th Cir.1976). When Congress enacts new legislation, it is presumed to be in light of the earlier enactments. *See Unit-*

---

8. Consumer products include any "tangible personal property which is used for personal, family, or household purposes." 15 U.S.C.A. § 2301(1) (2000).

*ed States v. Trident Seafoods Corp.*, 92 F.3d 855, 862 (9th Cir.1996), *cert. denied*, 519 U.S. 1109, 117 S.Ct. 944, 136 L.Ed.2d 833 (1997).

The Van Blarcums contend the Act's statutory scheme, legislative history, and underlying purpose indicate that Congress intended to preserve a consumer's access to a judicial forum. After examining the Act's statutory provisions, legislative history, the comments and rules promulgated by the Federal Trade Commission (FTC), and case law interpreting the Act, we agree. In *Southern Energy Homes, Inc. v. Lee*, 732 So.2d 994, 999 (Ala.1999), the Alabama Supreme Court addressed this issue and concluded that "the general provisions of [the FAA] are superseded by the subsequent and specific provisions in the Magnuson–Moss Act by which Congress has prohibited the inclusion in written warranties of clauses calling for binding arbitration." *Id.* at 999–1000.

Real parties contend the Van Blarcums have failed to meet their burden under the *McMahon* test to establish by the Act's text, legislative history, or purpose that Congress intended to preclude enforcement of the FAA. Real parties cite *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), and *McMahon*, 482 U.S. at 220, 107 S.Ct. 2332, for the proposition that certain statutory claims (such as claims arising under the Securities Exchange Act,[9] the Racketeer Influenced and Corrupt Organizations Act (RICO),[10] and the Age Discrimination in Employment Act (ADEA)[11]) are arbitrable, notwithstanding the fact that the applicable statute in each case provides for a judicial forum. *See Gilmer*, 500 U.S. at 35, 111 S.Ct. 1647; *McMahon*, 482 U.S. at 230, 238, 242, 107 S.Ct. 2332.

As the *Southern Energy* court notes, the question in each of those cases was "whether a statutory right of action pro-

vided by Congress superseded the FAA so as to prohibit the enforcement of arbitration agreements." *Southern Energy*, 732 So.2d at 998. The *Southern Energy* court distinguished *Gilmer and McMahon*, as well as several other cases, noting that the decisions in each case were based on findings that there was nothing in the text of the statute at issue or its legislative history explicitly precluding binding arbitration. *Id.* at 998–99. The court noted the "silence in the text" and "silence in the legislative history." *Id.* at 998. The *Southern Energy* court concluded that "[t]he Magnuson–Moss Act is different, both in text and in legislative history," in that it clearly reflects an intent by Congress to prohibit the use of binding arbitration. *Id.* at 999. We agree. Accordingly, we hold that the FAA is superseded by the Act's specific provisions prohibiting the use of binding arbitration clauses in written warranties.

### Definition of "Consumer Product"

Real parties also challenge the applicability of the Act by alleging that the mobile home at issue does not fall within the scope of the Act's "consumer product" definition. The Act defines "consumer product" as "any tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes (including any such property intended to be attached to or installed in any real property without regard to whether it is so attached or installed)." 15 U.S.C.A. § 2301(1) (2000). It is undisputed that the Van Blarcums' mobile home was "distributed in commerce."

Real parties rely on a statement by Congressman Moss during floor debate on the Act that "[a] house would not fall within the definition of consumer product since a house is not quite 'tangible personal property,' "[12] to support their contention that

9. 15 U.S.C.A. § 78j(b) (2000).

10. 18 U.S.C.A. § 1961 *et seq.* (2000).

11. 29 U.S.C.A. § 621 *et seq.* (2000).

12. 120 Cong.Rec. 139, H9316 (1974), *reprinted in* 64 Fed.Reg. 19700, 19703 n. 22 (1999).

the Van Blarcums' mobile home does not fit within the intended definition of "consumer product." Additionally, they claim support in *Clark v. Jim Walter Homes,* 719 F.Supp. 1037 (M.D.Ala.1989). Their reliance on *Clark,* however, is misplaced. In *Clark,* plaintiffs contracted with a builder for the construction of a *prefabricated* or *modular* home. *Id.* at 1044. The court distinguished between a good that is movable and one that is stationary, holding a prefabricated home is stationary once construction is completed. *Id.* at 1043–44.

Unlike a prefabricated home that is stationary once attached to land, a mobile home by its very nature is a movable dwelling. FTC rules interpreting the Act state that any ambiguity about whether a product is covered under a definition should be "resolved in favor of coverage." 16 C.F.R. § 700.1(a) (2000). Thus, keeping in mind the broad scope of the Act, we conclude although a stationary dwelling falls outside the reach of "consumer good" because it is "real property," a mobile home is within the definition because it remains "tangible personal property" even though it may be attached to real property. *See* 16 C.F.R. § 700.1(a)–(f) (2000).

### Arbitration Agreement as Separate Document

■ Real parties next argue the Act does not bar binding arbitration in this case because the Agreement executed by the Van Blarcums was a "separate contract" and was not included in the "written warranty." In support, they argue that the Van Blarcums' reliance on section 2310(a)(3) of the Act as a bar to binding arbitration is misplaced because that section applies only to warrantors who choose to include *in their written warranties* a requirement that a consumer resort to an informal dispute settlement mechanism (IDSM) prior to pursuing a legal remedy for breach of warranty.[13] Because here, according to real parties, no arbitration

provision or any type of IDSM was *incorporated into the terms of the written warranties,* the rationale that binding arbitration is precluded (because the provisions only allow warrantors to require consumers to "initially resort" to such informal procedures before filing suit)[14] is inapplicable. Therefore, real parties contend that nothing in the Act prohibits the use of binding arbitration provisions in a *separate* agreement.

■ As noted, the Agreement states it "is executed contemporaneously with, *and is part of,*" the Contract. It further states it "inures to the benefit of" Homestar "as fully *as if the manufacturer was a signatory*" to the Contract, and "inures to the benefit of" any lender providing financing for the purchase of the home. We conclude the Agreement is "incorporated" into and "is part of" the Contract. The written warranties by Nationwide and Homestar are contained in separate documents and make no reference to the Agreement. Nonetheless, we conclude that if the Act prohibits a warrantor from including an absolute bar on judicial remedies in its *warranty,* it also precludes a warrantor from incorporating such an absolute bar in a corresponding sales contract. Allowing warrantors to do in a separate agreement what they are clearly prohibited from doing in a written warranty would be to allow an "end-run" around the Act and would completely eviscerate its prohibition against binding arbitration. *See Wilson v. Waverlee Homes,* 954 F.Supp. 1530, 1539 (M.D.Ala.1997), *aff'd,* 127 F.3d 40 (11th Cir.1997) (a warrantor may not "do by surrogate or vicarious means what it is forbidden to do on its own behalf.")

### Relators' Challenge to Binding Arbitration

■ Section 2312(c) of the Act authorizes the FTC to promulgate rules govern-

---

**13.** 15 U.S.C.A. § 2310(a)(3) (2000); 16 C.F.R 703.2(a) (2000).

**14.** *See* 15 U.S.C.A. § 2310(a)(3) (2000).

ing implementation of the Act. 15 U.S.C. 2312(c)(2000). Accordingly, the FTC has published guides and rules interpreting the Act, including the following: (1) Rule 701, specifying the information that must appear in a written warranty on a consumer product; (2) Rule 702, detailing the obligations of sellers and warrantors to make warranty information available to consumers prior to purchase; and (3) Rule 703, specifying the minimum procedural standards for any internal dispute settlement mechanism ("IDSM"), which must be followed by any warrantor who wishes to incorporate an IDSM, through a prior resort requirement, into the terms of a written consumer product warranty.[15] Recently, the FTC published its "Final Action," [16] 64 Fed.Reg. 19700 (1999), a review of warranty-related rules and guides, including its Interpretations of the Act ("Interpretations") [17] and Rules 701, 702, and 703.

▆▆▆ The Act generally applies to written warranties covering consumer products. *See* 16 C.F.R. § 700.3(c). Section 2301(5) of the Act defines a "warrantor" as "any supplier or other person who gives or offers to give a written warranty or who is or may be obligated under an implied warranty." 15 U.S.C. § 2301(5); *see also* 16 C.F.R. § 701.1(g) (defining "warrantor" as "any supplier or other person who gives or

offers to give a written warranty."). Here, both Homestar and Nationwide provided separate written warranties and are therefore written "warrantors" under the Act.

Section 700.8 of the FTC's Interpretations prohibits a warrantor from indicating in *any* warranty or service contract that the decision of the warrantor, service contractor, or any designated third party is final or binding in any dispute involving the warranty or service contract. 16 C.F.R. § 700.8 (emphasis added). It further characterizes any such statements as "deceptive" because the Act "gives state and federal *courts* jurisdiction over suits for breach of warranty and service contract." *Id.* (emphasis added).

The Act encourages (but does not require) warrantors to establish informal dispute settlement mechanisms for the fair and expeditious settlement of consumer disputes, and authorizes the FTC to establish minimum procedures for such informal mechanisms. 15 U.S.C. § 2310(a)(1), (2). The rules provide the minimum standards which must be met by any informal mechanism that a warrantor incorporates into a written warranty. 16 C.F.R § 703. Although a warrantor *may*, if it elects to do so, include a provision requiring a consumer to pursue informal dispute resolution procedures before filing suit,[18] the rules

---

**15.** *See* Federal Trade Commission Rules, Regulations, Statements and Interpretations Under the Magnuson–Moss Warranty Act, 16 C.F.R. §§ 701–703 (2000).

**16.** The complete title is "Final Action Concerning Review of Interpretations of Magnuson–Moss Warranty Act; Rule Governing Disclosure of Written Consumer Product Warranty Terms and Conditions; Rule Governing Pre–Sale Availability of Written Warranty Terms; Rule Governing Informal Dispute Settlement Procedures; and Guides For the Advertising of Warranties and Guarantees." *See* 64 Fed.Reg. 19700 (1999).

**17.** 16 C.F.R. § 700 *et seq.* The FTC's Interpretations are advisory in nature and are intended to clarify the Act's requirements.

**18.** The Act does not *require* consumers to "initially resort" to informal dispute resolution

procedures as a prerequisite to filing suit. Rather, it provides that *if* a warrantor establishes such procedures and requires consumers to resort to the procedures prior to filing suit, the procedures must meet the minimum standards established by the FTC. *See* 15 U.S.C. § 2310(a)(3). Apparently, warrantors rarely include such provisions in their written warranties. The FTC recently commented as follows:

> Despite the fact that the Rule [703] seldom comes into play in the manner originally contemplated (*i.e.,* by inclusion of prior resort requirements in warranties), the Rule now serves as an essential reference point for state lemon laws. Specifically, many state lemon laws, paralleling section 110(a)(3) of the Warranty Act, prohibit the consumer from pursuing any state lemon law rights in court unless the consumer first seeks a resolution of the claim to the manufacturer's (or a state-operated) IDSM.

require that any such mechanism inform consumers that if they are dissatisfied with the outcome of the procedures, they may pursue legal remedies, *id.* at § 703.5(g)(1), and that "[d]ecisions of the [m]echanism shall not be binding on any person." *Id.* at § 703.5(j). Moreover, the rules prohibit a warrantor from charging consumers a fee for use of the mechanism. *Id.* at § 703.3(a).

Section 2310(d) provides that "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages" or other relief in state or federal court. 15 U.S.C. § 2310(d)(1).

Rule 703 has been interpreted to prohibit the use of binding arbitration clauses in written warranties.[19] The Commission recently reaffirmed its view that "reference within the written warranty to any binding non-judicial remedy is prohibited by the Rule and the Act." 64 Fed.Reg. at 19708 (quoting 40 Fed.Reg. 60168, 60211 (1975)). The Commission, noting "that this interpretation continues to be correct," declined to amend the rule, and stated, "Rule 703 will continue to prohibit warrantors from including binding arbitration clauses in their contracts with consumers that would require consumers to submit warranty disputes to binding arbitration." *Id.* at 19708–09. The Commission cited with approval a decision by an Alabama federal district court, *Wilson v. Waverlee Homes, Inc.*, 954 F.Supp. at 1530, holding that the Act prohibits warrantors from including binding arbitration clauses in written war-

ranties on consumer products. 64 Fed. Reg. at 19709. In *Waverlee*, the issue before the court was whether a defendant manufacturer could rely on an arbitration clause in an installment contract between a mobile home retailer and a consumer (where the manufacturer was not a party to the sales contract) to compel the consumer to submit to binding arbitration. The court held the manufacturer could *not* compel arbitration in such circumstances. Because the Act precluded the manufacturer from including a binding arbitration agreement in its own written warranty to the consumer, the court concluded the manufacturer could not "do by surrogate or vicarious means what it is forbidden to do on its own behalf." *Waverlee*, 954 F.Supp. at 1539. The court reasoned that a contrary holding would result in "the complete and utter evisceration of the Magnuson–Moss Act." *Id.* at 1540.

In *Southern Energy*, the Alabama Supreme Court reached a similar conclusion:

> Suffice it to say that although several sections of the Magnuson–Moss Act make reference to informal dispute-resolution procedures or mechanisms, those and other provisions also make it clear that *a consumer is to have access to a judicial remedy.* In short, a warranty may expressly set forth an informal dispute-resolution mechanism and may make the use of that mechanism a prerequisite for filing a court action, but it may not provide that the use of such a mechanism is binding or that it is a bar to a court action.

*Southern Energy*, 732 So.2d at 996 (citations omitted) (emphasis supplied).

64 Fed.Reg. at 19707 (emphasis in original) (footnotes omitted).

---

* Those statutes also provide that the consumer is required to use the manufacturer's IDSM *only* if it complies with the FTC's standards set out in Rule 703. Thus, in effect, these states incorporate Rule 703 into their lemon laws. A threshold question for many state lemon law suits is whether the IDSM complies with Rule 703 and thus whether the consumer must use that IDSM or may proceed directly to a court action.

**19.** See 64 Fed.Reg. at 19,708 (discussing Rule 703's prohibition against binding arbitration clauses in written warranties); *see also Southern Energy Homes, Inc. v. Lee*, 732 So.2d 994, 996 (Ala.1999) (citing *Wilson v. Waverlee Homes, Inc.*, 954 F.Supp. 1530, 1537–40 (M.D.Ala.1997), *aff'd*, 127 F.3d 40 (11th Cir. 1997)).

The dissent agrees that the Act bars binding arbitration of the Van Blarcums' *written* warranty claims, but concludes that arbitration of their *implied warranty and non-warranty claims* may be compelled because the Act does not preclude it. In support, the dissent cites *Boyd v. Homes of Legend, Inc.,* 981 F.Supp. 1423 (M.D.Ala.1997), *remanded* on jurisdictional grounds *by* 188 F.3d 1294, 1300 (11th Cir. 1999) (instructions given to district court to vacate in part), and *Rhode v. E & T Investments, Inc.,* 6 F.Supp.2d 1322 (M.D.Ala.1998). Both are distinguishable.

In *Boyd,* the issue was whether a defendant mobile home dealer who *was* a signatory to a purchase contract containing an arbitration agreement but *had not provided any written warranty* to the consumer could compel arbitration of the consumer's claims involving *only* non-written warranties. The court noted that this question was not presented in *Waverlee,* where the defendant manufacturer *had* provided a written warranty to the consumer. *Boyd,* 981 F.Supp. at 1435. In distinguishing *Waverlee,* the court noted:

> Here, however, the [dealer] defendants are *not written warrantors* under the Magnuson–Moss Act, having provided no written warranty to the [purchaser] plaintiffs. Consequently, they are not subject to the numerous provisions of the Act aimed exclusively at written warranties, including those governing the establishment of informal dispute procedures, which were shown in *Waverlee Homes* to be the source of the clearest expressions of congressional intent to preclude binding arbitration in certain circumstances.
>
> The [dealer] defendants are, however, 'warrantors' under the Act, which defines such a person as 'any supplier or other person ... who is or may be obligated under an implied warranty, 15 U.S .C.A. § 2301(5), and defines an implied warranty as one 'arising under State law (as modified by ... this title) in connection with the sale by a supplier

of a consumer product.' 15 U.S.C.A. § 2301(7). Thus, the [dealer] defendants are subject to those provisions of the Act that address warranties in general, and implied warranties in particular, but not those specifically directed to written warranties.

*Id.* at 1436–37 (emphasis supplied) (footnotes omitted). The *Boyd* court concluded that because the dealer was *not a "written warrantor,"* the Act did not preclude binding arbitration of the consumers' implied and other non-warranty claims. *Id.* (emphasis supplied). Significantly, the *Boyd* court noted that it was *not* addressing the "interesting question" now before this Court:

> It is interesting to note that the court is not now confronted with a claim where a consumer seeks to pursue both written and non-written warranty claims against a warrantor. Therefore, the court need not address the interesting question of whether the Magnuson–Moss Act would restrict binding arbitration of the non-written warranty claim as well, in particular if it were closely related to, or intertwined with, the written warranty claim. Although this issue could have been raised in *Waverlee Homes,* it was not.

*Id.* at 1435 n. 8.

In *Rhode,* the plaintiff brought breach of warranty claims against both the manufacturer and the seller of a mobile home. *Rhode,* 6 F.Supp.2d at 1325. As in *Waverlee,* the manufacturer had provided the plaintiff with a written warranty, but was a signatory to neither the installment contract, which included an arbitration agreement, nor a separate arbitration agreement between the plaintiff and the seller. *Id.* at 1328–29. The plaintiff's breach of warranty claims against the manufacturer were not intertwined with his breach of warranty claims against the seller. *Id.* at 1331. As in *Waverlee,* the court held the arbitration agreement included in the sales contract was not applicable to the manufacturer, and refused to compel arbitration

of plaintiff's claims against the manufacturer. *Id.*

The mobile home seller in *Rhode,* like the seller in *Boyd,* was a signatory to both an installment contract containing an arbitration agreement and a separate arbitration agreement, but *did not provide the plaintiff with a written warranty. Id.* at 1332. In fact, the installment contract between the plaintiff and seller specifically *disclaimed* all warranties except the implied warranties that could not be avoided by law. *Id.* Nonetheless, the court held that insofar as the plaintiff's claims against the seller included express-warranty claims, the Act precluded the seller from invoking the arbitration clause as to those claims, but that the seller could compel arbitration of plaintiff's breach of implied-warranty claims. *Id.*

Thus, although both the *Boyd* and *Rhode* courts distinguished between breach of written-warranty and implied-warranty claims, the distinction in each case was based on the fact that *the seller had not provided a written warranty to the plaintiff.* In the present case, however, both Homestar (the manufacturer) and Nationwide (the seller) provided separate written warranties. Accordingly, both are written warrantors under the Act and are precluded from including in a written warranty any provision calling for binding arbitration.

"It is a familiar law of contracts that an illegal agreement is unenforceable." *Palma v. Verex Assur., Inc.,* 79 F.3d 1453, 1462 (5th Cir.1996) (quoting *DiFrancesco v. Houston Gen. Ins. Co.,* 858 S.W.2d 595, 598 (Tex.App.—Texarkana 1993, no writ)); *Phillips v. Phillips,* 820 S.W.2d 785, 789 (Tex.1991). The arbitration Agreement between Nationwide and the Van Blarcums [20] provides for binding arbitration of

all "claims under any warranties, *either express or implied* " in violation of the Act (emphasis supplied). Because the Agreement compels arbitration of the Van Blarcums' written warranty claims in violation of the Act, we hold the Agreement is invalid and unenforceable in its entirety, both as to the Van Blarcums' written warranty and implied warranty claims. We sustain the Van Blarcums' first issue.

Our holding that no valid arbitration agreement exists makes it is unnecessary for us to address the Van Blarcums' second issue. *See* TEX.R.APP.P. 47.1.

We conditionally GRANT the Van Blarcums' petition for mandamus and direct the respondent to vacate her order of February 2, 1999 compelling arbitration. The writ will issue only if respondent fails to act promptly in accord with this opinion.

Chief Justice SEERDEN not participating.

Justice RODRIGUEZ delivered a dissenting opinion, in which Justice CHAVEZ joined.

RODRIGUEZ, Justice, dissenting.

I agree with the majority that the binding arbitration agreement at issue in this case conflicts with the Magnuson–Moss Warranty Act (Act) and is unenforceable as to the Van Blarcums' written warranty claims. However, I disagree that it is unenforceable as to their implied warranty claims.

The real issues in this case with regard to implied warranties are (1) whether binding arbitration of implied warranty claims is prohibited under the Act; and (2) whether providing a written warranty changes the result. Rather than address these issues, the majority reasons that "[b]ecause the Agreement compels arbitra-

---

**20.** Although American Homestar was not a signatory to the arbitration agreement, the agreement provides the manufacturer is a third-party beneficiary of the agreement:

The parties agree that this Arbitration Provision inures to the benefit of, and is intend-

ed to be for the benefit of, the manufacturer of the Home which is the subject of the Retail Installment Contract, as fully as if the manufacturer was a signatory to the Retail Installment Contract.

tion of the Van Blarcums' written warranty claims in violation of the Act ... the Agreement is invalid and unenforceable in its entirety, both as to the Van Blarcums' written warranty and implied warranty claims." The majority also concludes that because Nationwide and Homestar are written warrantors under the Act, they are precluded from including in a written warranty any provision calling for binding arbitration. Because I disagree with the majority's reasoning and its conclusion regarding arbitration of the implied warranty claims, I respectfully dissent from that portion of the majority's opinion.

The courts in Alabama have interpreted the Act to supersede the Federal Arbitration Act (FAA) with regard to binding arbitration of express written warranties. *See Rhode v. E & T Investments, Inc.*, 6 F.Supp.2d 1322, 1331–32 (M.D.Ala.1998) (buyer not compelled to arbitrate claims, if any, for breach of written or express warranties pursuant to Act); *Wilson v. Waverlee Homes, Inc.* ., 954 F.Supp. 1530, 1537–40 (M.D.Ala.1997), *aff'd*, 127 F.3d 40 (11th Cir.1997) (Congress intended to preclude binding arbitration of written or express warranty claims between buyer and seller arising under Act); *Southern Energy Homes, Inc. v. Lee*, 732 So.2d 994, 999–1000 (Ala.1999) (Act prohibits provisions calling for binding arbitration in written warranty).

Although the Alabama courts have concluded that the Act prohibits binding arbitration of written warranty claims, they have not gone so far as to conclude that the Act precludes binding arbitration of implied warranty claims. In fact, they have held the opposite. In *Boyd v. Homes of Legend, Inc.*, 981 F.Supp. 1423, 1437 (M.D.Ala.1997), *remanded on jurisdictional grounds*, 188 F.3d 1294 (11th Cir.1999)

(instructions given to district court to vacate in part), the court held that the Act did not prohibit binding arbitration of non-written or implied warranty claims. *See Boyd*, 981 F.Supp. at 1441. In *Rhode*, another Alabama district court concluded that the Act prohibits arbitration of written or express warranty claims, but does not prohibit arbitration of implied warranty claims. *See Rhode*, 6 F.Supp.2d at 1332. While *Boyd* and *Rhode* are distinguishable from our case in that no written warranties were provided by the seller of the mobile homes, the reasoning in *Boyd* and the holding in *Rhode* are supportive of the conclusion that binding arbitration of implied warranty claims is not prohibited by the Act whether or not a written warranty is given.

The *Boyd* court's analysis of the Act's impact on arbitration of implied warranties is well reasoned. I would apply that same analysis and reasoning to the case before this Court. The *Boyd* court noted that section 2310(d) does not, nor does any other provision of the Act, prohibit binding arbitration of implied warranty claims. *Id.* at 1437 (citing 15 U.S.C.A. § 2310(d)).[1] After examining the Act and related materials, the *Boyd* court concluded that "it is exclusively in the context of written warranties ... that Congress sought to limit recourse to binding arbitration." *Id.* at 1438. "[T]his disparate treatment of written and non-written warranties, with the increased regulatory bite placed on the former, is consistent with Congress's overall aim in the Act to protect consumers from unfair *written* warranties." *Id.* at 1438 n. 11 (emphasis added). Congress's intentions regarding implied warranties were far less ambitious than its concerns about unequal bargaining power in connection with written warranties. *Id.* at 1440.

---

1. Section 2310(d)(1) provides that a consumer may bring suit in any court of competent jurisdiction for actions involving implied warranties. *See* U.S.C.A. § 2310(d)(1) (2000). This section should only be read as a jurisdictional provision, providing non-exclusive avenues for redress of implied warranty claims in

state or federal court. *See Boyd v. Homes of Legend, Inc.*, 981 F.Supp. 1423, 1437 (M.D.Ala.1997), *remanded on jurisdictional grounds*, 188 F.3d 1294 (11th Cir.1999) (instructions given to district court to vacate in part).

The court determined that Congress's intent regarding implied warranties was "to prevent warrantors from employing sleight of word in their written warranties to *limit* or *eliminate state law implied warranty protections.*" *Id.* at 1439 (emphasis added).[2] Rather than revamp or supplement the treatment of implied warranties under state law, Congress chose to maintain the status quo. *Id.* at 1440.

The *Boyd* court's reasoning is effectively summarized in the following excerpts:

> This difference in treatment between written and non-written warranties stems from the fact that implied warranties, as the Magnuson–Moss Act recognizes, arise under state law for the most part. These warranties unlike the written warranties that are the primary focus of the Act, therefore are not the product of bargaining between powerful manufacturers and relatively weak consumers. Instead, they derive from the legislative and judicial processes. Because these processes are not directly susceptible to the unequal-bargaining concerns addressed in the Act, Congress's decision to refrain from providing additional protection for implied warranties in the Act makes sense.

> \* \* \*

> ... [I]t is only with respect to written warranties that Congress sought in the Magnuson–Moss Act to protect consumers from exploitation by more powerful manufacturers and suppliers who desired to impose the requirement that disputes be resolved by binding arbitration. Congress chose not to do so with respect to manufacturers and suppliers subject only to non-written and implied warranties.

> \* \* \*

> Although Congress did intend to preclude *binding* arbitration in the context of *written warranties* under certain circumstances, it stopped short of doing so with respect to implied, *non-written,* warranties.

*Id.* at 1440–41 (emphasis in original) (footnote omitted).

Further, in *Rhode,* the court granted the seller's motion to compel arbitration, except to the limited extent Rhode's complaint stated written or express warranty claims. *See Rhode,* 6 F.Supp.2d at 1332. The court allowed for arbitration of implied warranty claims. *See id.* It is important to note that the arbitration of implied warranty claims was not made contingent upon whether or not a written warranty was provided. There is no suggestion that had there been a written or express warranty, the Act would preclude arbitration of implied warranty claims. The result in *Rhode* confirms that the Alabama courts distinguish the Act's effect on express warranty claims and on implied warranty claims, whether or not written warranties are given.

I would, therefore, conclude that the Act does not preclude binding arbitration of the Van Blarcums' implied warranty claims. Accordingly, I would hold that the arbitration agreement is invalidated only to the extent that it requires binding arbitration of the written warranty claims; to the extent it requires binding arbitration of other claims, including implied warranty claims and non-warranty claims, I would hold that the provision should be enforced and this Court should compel arbitration under the FAA.

---

**2.** Binding arbitration of implied warranties is not prohibited under the Act, nor do state law implied warranty protections include restrictions on arbitration of implied warranty claims. The courts in *Boyd* and *Rhode* allowed binding arbitration of implied warranty claims under the Act, in the absence of a written warranty. If binding arbitration for implied warranty claims is possible when no written warranty is given, agreeing to binding arbitration of those same claims as part of a written warranty in no way additionally limits or eliminates state law implied warranty protections.

Chief Justice SEERDEN not participating.

Dissenting opinion joined by Justice CHAVEZ.